# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

ARKANSAS LIGHT & POWER COMPANY *v.* PARAGOULD.

## Opinion delivered November 8, 1920.

1. MUNICIPAL CORPORATIONS—AUTHORITY TO "MAINTAIN" WATER-WORKS.—Under Kirby's Dig., § 5675, authorizing a city to operate and maintain waterworks constructed by improvement districts, the power to maintain involves the repair of the plant and the renewal of parts which have become worn out and in disrepair, and the repairs are not restricted to a reconstruction in the identical form in which the waterworks were originally constructed.

2. MUNICIPAL CORPORATIONS—MAINTENANCE OF WATERWORKS.—The statute authorizing the city council to maintain waterworks constructed by an improvement district empowers it to contract for an electric pump and for the current to operate it, the original steam pumping plant being retained as an emergency plant.

3. MUNICIPAL CORPORATIONS—ORDINANCE—EVIDENCE OF PASSAGE.—Under Kirby's Dig., § 3066, where the record containing city ordinances is produced containing a record of a certain ordinance, in the passage of which it is required that a majority of the members elected to the council shall concur, such record is *prima facie* evidence that the ordinance was duly passed, so that the burden of attacking it is on the party contending that it was not passed.

4. MUNICIPAL CORPORATIONS—ACCEPTANCE OF CONTRACT.—Where a contract for the installation of an electric pumping plant between a city and an electric power company was to become effective after publication of the municipal ordinance and its acceptance by the power company, a written notice by the manager of the power company that the installation of the pumping plant had been completed as per contract was an acceptance of the ordinance.

5. FRAUDS, STATUTE OF—DIFFERENT WRITINGS.—Different writings may be considered together to meet the requirements of the statute of frauds, where they on their faces are connected together.

6. CORPORATION—RATIFICATION OF AGENT'S CONTRACT.—If the manager of a corporation was not authorized to accept a contract with a city for furnishing electric power, it will be held to have ratified such acceptance where it furnished power thereunder for more than a year.

7. FRAUDS, STATUTE OF—RATIFICATION OF CONTRACT.—It is not essential that the ratification of an agent's act in accepting a contract within the statute of frauds should be in writing, though the acceptance must have been in writing, to comply with the statute of frauds.

8. WATERS AND WATERCOURSES—RIGHT OF CITY TO CHANGE WATER RATES.—A contract for the furnishing of power for a city waterworks plant which fixed the maximum monthly compensation to the power company on the basis of the rates then in force was not void as restricting the power of the city to change the rates, as such change would not reduce the compensation of the power company under the contract.

9. WATERS AND WATERCOURSES—RIGHT TO CHANGE WATER RATES.—Even if a contract for furnishing power to a city waterworks plant contemplated that the monthly compensation to the power company should be scaled down when the water rates then in force should be reduced, this did not invalidate the contract as restricting the city's right to change its rates, since the contract was made in contemplation of that right, and the power company could not complain unless it was deprived of reasonable compensation.

10. APPEAL AND ERROR—ORDER GRANTING NEW TRIAL.—Where the evidence was sufficient to show that the contract set forth in the complaint was entered into, and that defendant broke the contract, and there was conflicting evidence as to the damages resulting from the breach, a decision of the trial court setting aside the verdict and granting a new trial will not be reversed.

Appeal from Greene Circuit Court, First Division; *R. H. Dudley,* Judge; affirmed.

*Huddleston, Fuhr & Futrell,* for appellant.

1. The city was without power to make the contract alleged and sued upon. . The city was not acting in its proprietary capacity, but as trustee for the water districts 1 and 2. Kirby's Digest, § 5675; 117 Ark. 93. It was beyond the power of the city to make the contract. The statute only authorizes the city to operate and maintain the works, and not to reconstruct the system or change the plan of operation, but only to repair. 48 L.

R. A. 285. For definition of "maintain" see Anderson's Dict., p. 646; Universal Dict., vol. 3, p. 3008; Webster, Enc. Dict. and Worcester, Dict. *verbo.* To "maintain" means only to support what is already in existence. To "repair" means to restore to good order after decay, injury, dilapidation or partial destruction (2 Exch. 21); to "maintain" is to preserve or keep up in good order. 60 Barb. 417-21; 72 Atl. 461-4; 110 Md. 47; 121 Pac. 801-3; 61 Ore. 174; 98 S. W. 465; 200 Mo. 97. See, also, Acts 1893, p. 252; 60 Atl. 436; 73 N. H. 233; 79 Atl. 177; 84 Conn. 202; Ann. Cas. 1912 B, 1212. "Maintain" is practically the same as "repair" or keep in good order after decay or injury, etc. 107 S. W. 572-6; 27 *Id.* 447. "Maintain" is synonymous with repair, to keep up in good order.

2. The power to the council to adjust and regulate water rates for the purpose of operating and maintaining the water plant is governmental, and can not be surrendered. The contract provides and establishes a fixed charge for water rates for ten years, and, if valid, defeats the right of future councils to readjust water rates for ten years. Such a power is legislative, and can not be delegated. If the council can do this for 10 years, why not for 100? 45 U. S. (Law. Ed.), 679; 53 *Id.* 177; 7 So. 409; McQuillin on Mun. Corp., vol. 4, § 1738; 1 Elliott on Cont., § 603.

3. The contract is clearly outside the powers of plaintiff and void, and the city is estopped by a void contract. 6 R. C. L. 501; 18 A. L. R. 575, note 20; 139 U. S. 24, 59-60. It is *ultra vires.* 35 U. S. (Law. Ed.), 55; 3 McQuillin on Mun. Corp. 2586; 1 Dillon, Mun. Corp. 516. There is no estoppel in the present case. 36 Ark. 577; 47 *Id.* 269; 89 *Id.* 95; 96 U. S. 341; 98 *Id.* 621; 9 U. S. 45.

Plaintiff seeks to recover damages for breach of a void executory contract and there can be no recovery. 6 R. C. L. 501.

4. No contract was ever made; there must be a proposal on one side and an acceptance by the other.

This is elementary law. The acceptance must be upon the exact terms of the offer, and if the offer prescribes the manner, terms and time of acceptance, it can not be modified or changed, but must be accepted just as prescribed in the offer. A modified or conditional acceptance is a rejection of the original. 1 Page on Contracts, 48; 9 Cyc., p. 266 (d); Lawson on Contracts, §§ 18, 76-7; 4 Wheaton, 225; 10 Ark. 393; 97 *Id.* 618; 112 *Id.* 384.

5. The city failed to prove that the alleged ordinance was passed by the council as required by law. Kirby's Digest, § 5473; 211 S. W. 664; 40 Ark. 105; 105 *Id.* 506. The record fails to show that the yeas and nays were called as required by law. The verdict is contrary to the law and the evidence and the instructions are erroneous. Part performance is not available to take this case out of the statute of frauds. 103 Ark. 79; 46 *Id.* 80; 48 *Id.* 485.

*H. R. Partlow* and *Block & Kirsch,* for appellee.

1. The contract was not *ultra vires.* Municipal corporations have not only the powers expressly conferred by the Legislature, but those necessarily or fairly implied as incident to or essential for the purposes expressly declared. 130 Ark. 334; 116 *Id.* 125; 71 *Id.* 4.

While acting within the scope of its authority to contract, the council is vested with legislative discretion, with which the courts will not interfere unless the action is arbitrary or unreasonable or oppressive. 80 Ark. 125; 127 *Id.* 30; 101 *Id.* 223. The contract made by the council with appellant was authorized, and the power was not arbitrarily or unreasonably exercised. When a water plant is being operated by the city under section 5675, Kirby's Digest, the city is responsible for purchases made for its maintenance and operation. 86 Ark. 61; 94 *Id.* 80; 117 *Id.* 214.

2. The city in making the contract did not surrender any of its powers.

3. Since the contract was not void, there is no necessity for arguing estoppel under a void contract.

4. A binding contract was made and effected, even if there had been no writing. A proposal was made and the offer accepted.   139 U. S. 19; 42 N. E. 386.

5. The ordinance was properly passed by the council.   Kirby's Digest, § 5473; 108 Ark. 24.   The burden was not on the city, as the presumption is that the ordinance was properly passed when the book of city ordinances was produced.   108 Ark. 30.   If any formalities necessary to be observed were omitted, appellant should have produced the records to show any invalidity, and on a failure to do so the presumption is that it was valid.   56 Ark. 370; 90 *Id.* 292; 108 *Id.* 4.

6. The statute of frauds was complied with. Kirby's Dig., § 3654; 25 R. C. L. 639; 95 U. S. 289; 45 Ark. 17; 128 C. C. A. 219.   The statute does not apply to written contracts but oral ones.   Browne, Stat. Frauds, § 354 A; 83 Atl. 212.

7. There was no error in granting a new trial. Kirby's Digest, § 1238; 120 Ark. 99; 33 *Id.* 166; 98 *Id.* 334; 133 *Id.* 167; 126 *Id.* 427; 129 *Id.* 448; 132 *Id.* 45.   Under the law as above, the court properly set the verdict aside.

McCULLOCH, C. J.   This is an appeal from an order of the circuit court granting a new trial in an action in which appellee sued appellant for alleged breach of contract.   In the trial of the case before a jury the court submitted the issues, and the verdict was in favor of appellant.   The court sustained appellee's motion for a new trial, whereupon appellant filed the statutory stipulation making the order granting a new trial a final judgment (Kirby's Digest, section 1187, subdivision 2), and prosecuted an appeal.

A system of waterworks was constructed in the city of Paragould through the agency of two separate improvement districts, and when completed was taken over by the city pursuant to the statute (Kirby's Digest, section 5675) which provides that a city or town council, after the construction of waterworks or gas or electric

lights by any improvement district, "shall have full power and authority to operate and maintain the same, instead of the improvement district commissioners, and said city or town council may supply water and light to private consumers and make and collect uniform charges for such service, and apply the income therefrom to the payment of operating expenses and maintenance of such works."

Appellant, a domestic corporation, was operating an electric light plant under franchise from the city of Paragould and furnished electric current for domestic and industrial purposes in that city. The city council passed an ordinance on February 12, 1916, establishing, when accepted, a contract between the city and appellant, whereby appellant was to furnish and install a motor pumping plant at the water works for the purpose of pumping water for the city in the operation of the water works and to furnish the necessary electric current for operating the pump for a period of ten years and that the city would pay to appellant out of the revenues derived from sale of water to consumers the sum of $4,400 for installing the pump and would pay for the electric current furnished as aforesaid at certain stipulated rates.

Under this contract, if accepted, appellant was to furnish the services of an engineer to assist in keeping the pumping plant in proper condition and to keep a supply of coal to be used in operating the plant in case of an emergency. The city was to keep its own boilers at the plant in proper condition for use in any emergency when the pumping plant furnished by appellant might be temporarily out of commission. The ordinance provided that the contract should extend "for a period of ten years from and after the passage, approval and publication of the ordinance by the city and its acceptance in writing by the company," and that the city should pay for the power furnished under the contract subsequent to the "filing of notice with the city clerk by the

company that its equipment had been installed, and it is prepared to render said service of pumping water.''

Appellant's plant in the city of Paragould was operated and the business there conducted by a local manager, a Mr. Reynolds, and on February 5, 1917, after the pumps and machinery had been installed, the following writing was delivered to the city authorities by Mr. Reynolds in the name of appellant:

"Paragould, Arkansas February 5, 1917.
"Honorable Mayor and City Council,
    "Paragould, Arkansas.
"Gentlemen:
    "We have this day completed the installation of the pumps and machinery as per contract with the city of Paragould.      Yours very truly,
                "Arkansas Light & Power Company,
                        "W. T. Reynolds, Manager."

It appears from the testimony that prior to that time the Actuarial Bureau had required certain changes in the construction of the plant, which requirements were complied with, but delayed the final installation of the pumping plant and machinery. Immediately upon the giving of the above notice, appellant began operations pursuant to the terms of the contract by furnishing current and pumping water for the city, and that was continued from then until the month of August, 1918. A short time after appellant began pumping operations a controversy arose with the city as to whether the plant and machinery had been installed in accordance with the stipulations of the contract, and the city for a time refused to make payments for the current furnished, but finally consented to do so and made the payments under protest from month to month until appellant ceased to continue operations, as before stated, in August, 1918. At that time, appellant, through its president, repudiated the contract or rather raised the question that there never had been a written acceptance thereof and declined to proceed any further.  This suit was then insti-

tuted to recover damages for refusal on the part of appellant to perform the contract.

It is contended that, according to the undisputed evidence in the case, the judgment should have been in favor of appellant, and that the court erred in granting a new trial. If appellant is correct in the statement that there is no liability according to the undisputed evidence in the case, then the court should not originally have submitted the issues to the jury, but should have given a peremptory instruction in appellant's favor, and should not have granted a new trial.

The first ground urged why appellant is not liable is that the contract was one beyond the power of the city. The argument is that the statute hereinbefore quoted merely authorized the city council "to operate and maintain" the water works, and not to reconstruct the system or to change in anywise the plan of operation. Counsel urge that the word "maintain" is synonymous with the word "repair," and that the city council had no authority to abandon the operation of the steam pumping plant and substitute an electric pumping plant to be operated by electric current furnished by someone else. We think that the argument of counsel puts too narrow a construction upon the term "operate and maintain." It must be admitted that, under this statutory authority, the city did not have the right to discard the plant turned over to it and to construct another in its place, but the words used in the statute, when construed in the light of the purposes to be accomplished, must be given more elasticity and breadth than the argument of counsel justifies. The purpose of the statute was to authorize the city council, after the water works had been constructed and turned over, to perpetuate the same by having the city maintain it up to a standard of efficiency. This would necessarily involve the repair of the plant and the renewal of parts which became worn out and in disrepair. There is nothing in the language which compels restriction of the repairs to a reconstruction in identical form in which the

water works were originally constructed. Looking at it from a practical standpoint, what the statute requires is that the water works shall be kept up to the established standard, and that the city shall have control over it to determine in what way that standard of efficiency shall be maintained.

Under the contract involved in the present case, the city was not to reconstruct the plant in its entirety, nor was it even to discard wholly the pumping plant. That was to be held for emergency purposes, and appellant was to furnish an electric pumping plant, so that current could be supplied in the operation of the plant. This was not in any sense an abandonment of the plant or an attempt to reconstruct it. We are of the opinion that it falls within the wording of the statute.

Learned counsel for appellant insists that this case is controlled by the decision in *Augusta* v. *Smith*, 117 Ark. 93, but they are mistaken in their estimate of the effect of that decision. All that we held in that case was that the city council, after taking over a system of water works constructed by an improvement district, had no authority under the statute to sell the plant. The views that we have expressed are in accord with what was said in the opinion of this court in *Browne* v. *Bentonville*, 94 Ark. 80. Our conclusion on this branch of the case is that the contract was within the power of the city.

The next contention is that the passage of the ordinance was not shown to have been in accordance with the statute, which requires that the yeas and nays shall be called and recorded on the passage of an ordinance to enter into a contract and that a concurrence of a majority of the whole number of members elected to the council shall be required. Kirby's Digest, section 5473. Appellee introduced the ordinance book containing a record of the ordinance, which made a *prima facie* case of the due passage of the ordinance and cast upon the opposing party the burden of showing that the ordinance was not passed in accordance with the requirements of

the statute. Under section 3066 of Kirby's Digest printed copies of the ordinances and by-laws of any city or incorporated town, published by authority, and manuscript copies of the same certified under the hand of the proper officer, are made the evidence of passage of such ordinances, by-laws, etc. See case of *Malvern* v. *Cooper,* 108 Ark. 24, which is identical to the case now presented, and was decided adversely to appellant's contention.

It is next contended that there was no acceptance of the terms of the ordinance by appellant, and that the contract was one not to be performed within a year, and therefore within the statute of frauds. We are of the opinion that the written notice signed by Mr. Reynolds as manager constituted sufficient acceptance in writing to bind appellant to the terms of the contract. The ordinance required appellant to install the pumping plant and machinery and to give notice to the city "that its equipment has been installed and it is prepared to render said service of pumping water." The written acceptance did not literally follow the language of the ordinance, but it necessarily implied the acceptance of its terms, and was not susceptible to any other interpretation. It contained distinct notice that appellant had completed the installation of the pump and machinery "as per contract with the city of Paragould." The contract could only be accepted in its entirety, and written notice of the acceptance of any part of it would necessarily constitute an acceptance of the whole. The effect of this was not to alter the contract or to hold out a counter-proposal, but it was an unqualified acceptance of the contract, if it amounted to anything at all. It contained no counter-proposal, and no indications that any portion of the contract was unacceptable. The initial feature of the performance of the contract was the installation of the pumping plant and machinery, and the notice of such installation, in writing, was necessarily an acceptance of the terms of the contract, and an expression of readiness to proceed with its performance.

The rule is that where a contract is within the statute of frauds, different writings essential to an expression of the terms of the contract, in order to be considered together, must connect themselves with each other on their faces. *St. L., I. M. & S. Ry. Co.* v. *Beidler,* 45 Ark. 17; *Beckwith* v. *Talbot,* 95 U. S. 289; *Whitted* v. *Fairchild Cotton Mills,* 128 C. C. A. 219. The essential features of the contract evidenced by the two writings are present in this instance, for the notice of acceptance referred to the contract between appellant and the city, and there appears to have been no other contract between those parties to which the language of the notice was referable. It seems clear to us therefore that the writing constituted sufficient acceptance. The ordinance expressed all of the terms of a complete contract, and the letter which referred to that contract and impliedly accepted its terms was sufficient to bind the other party. 25 Ruling Case Law, page 639.

It is contended further on this subject that there is no evidence of authority on the part of Reynolds to bind appellant. The evidence shows that he was the manager of the electric plant that was being operated there, but there was no testimony adduced to show that he had authority to enter into new contracts. Conceding this to be true, there was evidence sufficient to justify a finding that appellant ratified the action of its agent, Reynolds, in entering into the contract by proceeding with and continuing in performance of the contract for a period of more than a year. Appellant was bound to have known that the contract was being performed, and that the performance was referable to the terms of the ordinance. Therefore the performance by the company constituted a ratification of the previously unauthorized action of its agent in writing this letter. It was not essential that the act of ratification should have been of equal dignity with the original form of the contract which the statute of fraud required to be in writing. The writing itself was sufficient, when ratified by the party to be

bound, to satisfy the statute of frauds. When appellant proceeded with the performance of the contract, its act in so doing was referable only to the written acceptance made by its agent, of which it was bound to take notice.

It is contended that the contract was void for the further reason that its performance would restrict the power of the city to alter rates for water furnished to consumers. The argument is that, because in the contract the compensation payable to appellant was based on a maximum percentage of the gross receipts collected from the consumers, this constituted an abdication by the city of its power to change the water rates to the consumers and rendered the contract void. In other words, it is insisted that the city could not contract away its legal power, and that the contract is void on that account. The first answer to this contention is that it is a mistake to say that in this contract the city has restricted its power to change the water rate. Under the contract the compensation to appellant for furnishing the current is based on the scale of water rates then in force, and the monthly compensation should not exceed 40 per cent. of the gross revenue collected; but it is further provided that "said 40 per cent. shall be determined by calculation based on the water rates now in force for sale of water and rental of hydrants." This language of the contract fixed the maximum rate of compensation on the schedule of rates then in force, and any change thereafter made by the city would not reduce the monthly compensation payable to appellant. Therefore this clause of the contract placed no restriction whatever on the right and power of the city to change the schedule of rates. But, even if the monthly maximum compensation was under the contract regulated by a new schedule of rates fixed from time to time, the result would be the same, because the contract must be construed in the light of the law in force at the time and with reference to the powers of the city to regulate water rates. The parties are presumed to have contracted with reference to the

power of the city to change the rates which entered into and became a part of the contract. It would have to be assumed that the city would not reduce the rates so as to deprive appellant of a reasonable compensation for its service to be performed under the contract. The contract fixed definitely the maximum amount of compensation, and any change which the city might make in the price of water furnished to the consumers could not alter the specified contract price to be paid to appellant as compensation for its services in furnishing power. This contract must be treated the same as any other made by the city in the operation of the water works, and, regardless of the schedule of rates to consumers, the city was bound by contracts made and obligations incurred in the operation of the plant. There is therefore no foundation for the contention that the city has contracted away its power to change the rates.

It is thus seen that the evidence in the case was sufficient to show that the contract set forth in the complaint was entered into and that appellant broke the contract by refusing after a time to perform it, and to make out a case in favor of the city for the recovery of damages. There was evidence which tended to establish damages resulting from appellant's breach of the contract. There was a conflict in the testimony as to the amount of damages, and under those circumstances this court will not reverse the decision of the trial court in setting aside the verdict and granting a new trial. *Clements* v. *Knight & Co.,* 125 Ark. 488; *Wilhelm* v. *Collison,* 133 Ark. 167.

The judgment of the circuit court in granting a new trial is affirmed, and judgment absolute will be entered to the effect that appellee is entitled to recover in accordance with the prayer of the complaint and the cause will be remanded for the assessment of damages.