McCutchen *v.* Siloam Springs.

4-2509

Opinion delivered May 23, 1932.

*A. L. Smith,* for appellants.

*Tom Williams, Williams & Williams* and *James B. McDonough, Jr.,* for appellees.

HUMPHREYS, J. Appellants, resident citizens and taxpayers of the city of Siloam Springs, Arkansas, instituted this suit on the 24th day of August, 1931, in the chancery court of Benton County to enjoin appellees from carrying out a contract entered into on the 6th day of August, 1931, between said city, with the approval of the board of improvement of Electric Light District No. 1, and the Trans-American Construction Company and Seymour Corporation as guarantor, to construct a power-house and install all necessary equipment therein, including Diesel engines to generate power to operate the light plant, water plant, and current for other purposes, upon the alleged ground that said contract is null and void because made by said city without statutory authority, and in contravention of amendments Nos. 10 and 13 to the Constitution of Arkansas, and because same is improvident.

The material allegations of the complaint were denied, and the cause was submitted upon the issues joined and evidence introduced, resulting in a finding and decree that the contract is valid and in a dismissal of appellants' complaint, from which is this appeal.

The record made in the case is voluminous, and to attempt a detailed statement of the facts would unduly extend this opinion. The substance of the facts necessary to a determination of the issues involved is as follows: Immediately after the electric light plant was constructed, in 1898, under a bond issue by Electric Light District No. 1, it was turned over to the city council for operation and maintenance, under § 5739 of Crawford & Moses' Digest, which is as follows: "In case of the construction of waterworks or gas or electric light works by an improvement district or districts, the city or town council, after such works are constructed, shall have full

power and authority to operate and maintain the same, instead of the improvement district commissioners, and said city or town council may supply water and light to private consumers and make and collect uniform charges for such service, and apply the income therefrom to the payment of operating expenses and maintenance of such works.''

The bonds were all paid long before the execution of the contract sought to be enjoined. The electric light system consisted of machinery and equipment in the powerhouse, twenty-five miles of poles and wires, transformers, meters, and much other apparatus necessary to a going light and power system. During the operation of the system by the council, something like $30,000 was expended out of the earnings of the system for new machinery and equipment in the maintenance thereof. After being used for about thirty years, the machinery and equipment in the powerhouse, in the opinion of competent experts, had become inefficient, uneconomical, obsolete, and hazardous. After investigating many modern powerhouses and equipment, the council concluded to install Diesel engines and other modern equipment in a new powerhouse on a small tract of land purchased by the city. In keeping with this purpose, the council advertised for bids, and let a contract for the construction of the powerhouse and installation of Diesel engines and other equipment to the Trans-American Construction Company, the lowest bidder, for $80,425, in monthly payments of $1,218 each, covering a period of about five and one-half years with no interest on the evidences of indebtedness or pledge orders until the maturity of each. It was also provided that, upon default in the payment of any pledge order, the Trans-American Construction Company might repossess the particular property sold or might operate the plant as the agent of the city until the pledge orders were paid out of the net earnings of said system. It was also provided that the city was not obligated to pay for the machinery or equipment out of any fund except the net earnings from said light plant.

A reversal of the decree is urged upon the ground that "operation and maintenance" used in the section of the statute quoted did not confer authority on the city council, acting in its capacity as trustee for Electric Light District No. 1, to abandon the old powerhouse and the old machinery and equipment therein and construct a new powerhouse on another tract of land and install therein modern, efficient, and more economical machinery and equipment. Appellant interprets the word "maintenance," as used in the statute, as synonymous with the word "repair," and contends that "repair" does not mean to reconstruct the system. This court, in construing the statute in question in the case of *Arkansas Power & Light Company* v. *Paragould*, 146 Ark. 1, 225 S. W. 435, gave the word "maintenance" a much broader meaning than the word "repair" by saying that the purpose and meaning of the statute was to authorize the council to keep the system up to an established standard, and, in its sound discretion, to determine the way in which the standard of efficiency should be maintained. In the recent case of *Anderson* v. *American State Bank*, 178 Ark. 652, 11 S. W. (2d) 44, in construing the scope of the word "maintenance" in a similar statute, it was ruled that authority was conferred on the county court to purchase a tractor on the theory that it was impossible to maintain highways without machinery.

A reversal of the decree is also urged on the ground that the contract is an improvident one. The chancellor found that the improvement was necessary, and that the contract was awarded to the lowest bidder for a fair price upon reasonable terms, and that it was in no sense improvident. After a careful reading and analysis of the testimony, we think his finding is supported by the weight of the evidence.

A reversal of the decree is also urged upon the ground that the contract is prohibited by constitutional amendments Nos. 10 and 13.

Amendment No. 10 forbids cities from making contracts in excess of their revenue for the current year. The city incurred no liability payable out of its revenues on account of the instant contract. The contract specifically provides to the contrary. Under the act for operation of the system by the council, none of the proceeds therefrom became the city's funds until expenses of operation and maintenance had been fully paid. The consideration for this contract or the purchase price must and can only be paid under its terms as maintenance charges out of the gross receipts derived from the operation of the system after operating expenses have been paid, and not out of funds belonging to the city; hence the amendment referred to is not applicable to the instant contract, and not inhibited by it under the ruling announced in the case of *Anderson* v. *American State Bank,* 178 Ark. 652, 11 S. W. (2d) 444.

Amendment No. 13 provides the manner in which cities may purchase, extend, improve, enlarge, build or construct light plants and distributing systems. According to the amendment, it must do so by a bond issue and special assessment after a majority of the qualified electors shall vote in favor of the project. Appellants contend that, since the adoption of the amendment, this is the exclusive method by which a light system may be acquired for or by a city. This section can only apply where a city acquires or already owns a plant in its own name, and not to a system which it has taken over for the purposes of operation and maintenance only in trust for an improvement district.

No error appearing, the decree is affirmed.