Burbridge *v.* Smyrna Baptist Church.

4-8315

Opinion delivered February 16, 1948.

Rehearing denied April 12, 1948.

*Aubert Martin,* for appellant.

*R. H. Peace, J. R. Wilson* and *E. B. Kimpel, Jr.,* for appellee.

McHaney, Justice. In *Smyrna Baptist Church* v. *Burbridge,* 205 Ark. 108, 167 S. W. 2d 501, we reversed the same chancery court because a demurrer to the complaint of the present appellees was sustained, which sought to recover damages from appellant growing out

of the wrongful issuance of an attachment from a court of justice of the peace, which attachment was wrongfully levied on certain lumber and logs cut from the land here involved. On a retrial the court rendered a decree awarding damages against appellant in excess of $1,000, including interest at 6% from 1936 to date of judgment on unliquidated demands, and in a cancellation of appellant's tax title to the 20-acre tract, and in quieting the title thereto in the trustees of the Smyrna Baptist Church.

It is stipulated that, in 1859, the then owners conveyed to D. W. Irwin and M. L. Stewart, deacons of said church and in trust for it, the tract described as the west half of the northeast quarter of the northeast quarter of section 22, Twp. 15 S., range 9 W., containing 20 acres. It was further stipulated that in 1910 this same tract forfeited for the non-payment of taxes in 1909 and was sold to appellant by the collector for the tax, penalty and costs of $1.95, and that, after the expiration of the redemption period of two years, the clerk issued to appellant a clerk's deed, describing the land as above; and that appellant has paid the taxes due on said tract each and every year from 1911 through 1937.

In 1936, appellant learned that the timber on said 20-acre tract was being cut and sawed into lumber and caused the attachment above mentioned to be issued and levied on certain lumber and logs at a small mill and certain lumber in the City of Warren made from logs cut from said land. These attachments gave rise to the present action for damages for their wrongful issuance.

The facts, stated as briefly as possible, are that sometime after acquiring title to this land the Smyrna Baptist Church built a church house on this land and also established a cemetery thereon. The church house was used for religious services until about the year 1900, or shortly thereafter, when it was totally destroyed by fire and has never been rebuilt. The church organization and membership has apparently disintegrated and for about 45 years has ceased to function as a church, but the burial ground or cemetery is still occasionally used to bury the dead. The cemetery is fenced and

contains about two acres, only a part of which is located on this 20-acre tract. It is kept in order by certain interested parties who meet there from time to time, annually, perhaps, for this purpose.

The three men who claim to be trustees in this action for the church do not show a very good title to their offices. Neither of them is a member of the church and all live considerable distances from this land. We do not hold them to be intruders or usurpers, but one witness testified that, to her knowledge, there was only one living member of said church.. The proof also shows that, sometime after the fire, all or practically all of the members secured letters of separation from the church clerk to join other churches.

On this showing we are of the opinion that the church was abandoned as a church from at least five to nine years before this 20-acre tract was assessed by the assessor and put on the tax books by the clerk in 1909.

All property, except such as is exempt by the constitution and laws of this state, is subject to taxation. Our constitution, Art. 16, § 5, provides " . . . the following property shall be exempt from taxation: . . .; churches used as such; cemeteries used exclusively as such; . . .". Section 13603 of Pope's Digest exempts from taxation, in subsection first, "all public school houses and houses used exclusively for public worship, and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit." Subsection third exempts "all lands used exclusively as graveyards, or grounds for burying the dead, except such as are held by any person, or persons, company or corporation, with a view to profit, or for the purpose of speculation in the sale thereof."

In *Brodie* v. *Fitzgerald,* 57 Ark. 445, 22 S. W. 29, this court held that, to be exempt, the property itself must be devoted to charitable purposes and not merely the income from it. In *Pulaski County* v. *First Baptist Church,* 86 Ark. 205, 110 S. W. 1034,, it was held that a vacant lot belonging to the church and adjacent thereto

was subject to taxation. So it appears to us that, even had the church continued to exist, it would not have been entitled to have exempt the whole 20 acres from taxes, but only such part of it as was used exclusively for church purposes, including the cemetery.

The trial court held that, under § 11368 of Pope's Digest the whole tract of 20 acres was exempt from taxation. We cannot agree. This section provides that all lands "not exceeding forty acres," that have been or may be conveyed to any person in trust for the use of any religious society in this state, either for a meeting house or burying ground shall descend, etc. It makes no reference to exemption from taxation, but simply provides that such land and the improvements thereon shall descend in perpetual succession to the trustees and their successors who may be appointed trustees according to the rules and regulations of such society. The previous section, 13603, above quoted, limits the exemption from taxation to "all lands used *exclusively* as graveyards, or grounds for burying the dead," and only such lands as are so used exclusively for such purpose are exempt. This is in accord with the constitutional provision above quoted that the exempted area is "cemeteries used exclusively as such." The fact that a two-acre cemetery is located on a 20-acre tract does not exempt the whole tract. The same is true as to churches. *Pulaski County* v. *First Baptist Church, supra.*

When the church burned in or about 1900 and disbanded as a church no part of the 20-acre tract was thereafter used for church purposes, exclusively or otherwise, except the cemetery, and it was the duty of the assessor to assess the whole of said tract, except that part used as a cemetery and which was under fence. This he did in 1909 by assessing the whole tract, and appellant bought it at the tax sale in 1910. He has paid the taxes every year since to and including 1937, and perhaps subsequent years.

Section 8921 of Pope's Digest provides: "Payment of taxes on wild and unimproved land in this State by any person or his predecessor in title, for a period of fifteen

consecutive years (at least one of said payments being made after the passage of this Act), shall create a presumption of law that such person, or his predecessor in title, held color of title to said land prior to the first payment of taxes made as aforesaid, and that all such payments were made under color of title." The land here is wild and unimproved and there is no adverse occupant except the dead. Appellant has paid the taxes for more than 15 years consecutively and we think vested the title thereto in him. We so held in *Murphy* v. *Wall*, 208 Ark. 395, 186 S. W. 2d 436. In *Koonce* v. *Woods*, 211 Ark. 440, 201 S. W. 2d 748, we said: "We do not have a statute establishing a period directly applicable to the facts here; but by analogy certain legislative acts should be considered. *Schmeltzer* v. *Scheid,* 203 Ark. 274, 157 S. W. 2d 193, emphasizes the State's policy of protecting rights of one who in good faith pays taxes on real property. By Act 66 of 1899, Pope's Digest, § 8920, payment of taxes on unimproved and unenclosed land under color of title for a period of seven consecutive years constitutes an investiture of title. *Towson* v. *Denson,* 74 Ark. 302, 86 S. W. 661, and other cases cited in *Schmeltzer* v. *Scheid.* By subsequent legislation (Act 199 of 1929, Pope's Digest, § 8921) one who pays taxes on wild and unimproved land for a period of fifteen years has color of title as a presumption of law. These statutes, of course, are not limitation measures. They establish, in the one case, an investiture of title, and in the other there attaches color of title as a legal presumption.

"A presumption of law, or a fact, or a condition, is just as binding on the State as on individuals; and the State, by acceptance of a taxpayer's money, as in the instant case, should be bound in a court of equity by analogous conditions which the lawmakers saw proper to declare as public policy. By this we do not mean that the State can be estopped by acts of its officials they were not authorized to consummate. On the contrary, the same principle heretofore promulgated is given effect, and it is this: After a long lapse of time a grant or conveyance by the State or its officials will be presumed—not as a

matter of fact, but one of law." See, also, *Deniston* v. *Langsford*, 211 Ark. 780, 202 S. W. 2d 760.

So, we conclude that the purchase of the 20-acre tract in 1910 and the continuous payment of taxes by appellant for all these years vested the title to said tract in him, subject to the right of the people of the community to continue to bury their dead in the cemetery and to keep the fence and the ground within the fence in repair, and to that end may have ingress and egress thereto and therefrom.

The decree will be reversed and the cause remanded with directions to dismiss the action of appellees for damages, and to enter a decree vesting and quieting the title to said tract in appellant in accordance with this opinion.

ED. F. McFADDIN, Justice (dissenting). I respectfully dissent from the majority; and here are my reasons:

1. Burbridge cannot claim under § 8920, Pope's Digest, because the clerk's tax deed to Burbridge described the land as:
"West part of the northeast quarter of the northeast quarter of section twenty-two," etc.

*Woodall* v. *Edwards*, 83 Ark. 334, 104 S. W. 128, holds that such a "part description" makes a tax deed void on its face, and therefore prevents it from constituting color of title.

2. Burbridge cannot claim under § 8925, Pope's Digest, because he did not have "actual adverse possession."

3. Burbridge cannot claim under § 8921, Pope's Digest, because the land was not "wild and unoccupied land." The majority opinion seems to proceed on the theory that this last-mentioned section is applicable. But land continuously used for a cemetery is not "wild and unoccupied," and part of the land was so used and was therefore exempt from taxation.

Burbridge's sole title is based on the tax sale (which is void) and possession (which he did not actually have). Since none of these statutes apply, I think the decree should be affirmed as to the ownership of the land. Mr. Justice ROBINS and Mr. Justice MILWEE join me in this dissent.