WILLIAMS *v.* HARRIS, MAYOR.

4-9004                                    224 S. W. 2d 9

Opinion delivered October 31, 1949.

*Linus A. Williams,* for appellant.

*J. H. Brock,* for appellee.

LEFLAR, J. The City Council of Clarksville on May 31, 1949, adopted an ordinance authorizing the issuance, subject to favorable vote at a special municipal election, of $100,000 in bonds, the proceeds of which were to be used to contribute "to the cost of a factory building for the purpose of securing a new manufacturing enterprise for the City." The bonds were "to mature serially at the rate of $20,000 per year" for five years, and were "to be payable solely from the net revenues . . . derived by the City from the ownership and operation of its electric light and power plant."

This ordinance was adopted under authority of the Arkansas General Assembly's Act 463 of 1949. Act 463, after defining the term "municipality" to mean "a city of the second class," provided that any such municipality should have the power to issue bonds for any public purpose, with the following proviso:

"Section 5. Bonds issued under the provisions of this Act shall be payable solely from the net revenues derived by the municipality from the operation of one or more public utility plants, which net revenues may be pledged for the payment of these bonds, and the revenue bonds shall not in any event constitute an indebtedness of such municipality within the meaning of the constitutional provisions or limitations, and it shall be plainly stated on the face of each bond that the same has been issued under the provisions of this Act and that it does not constitute an indebtedness of such municipality within any constitutional or statutory limitation."

A complaint in equity brought by Williams as a citizen and taxpayer of Clarksville against the mayor, recorder, and aldermen of the City sets up the facts just indicated, asserts that the $100,000 amount of the proposed bond issue is greater than the total revenues of the City of Clarksville from all sources for the current fiscal year, and alleges the unconstitutionality of the ordinance and of Act 463. The defendants filed a general demurrer. This demurrer was sustained by the Chancellor. Plaintiff appeals.

The relevant constitutional provisions are portions of Amendment 10 and Amendment 13 of the Constitution of Arkansas.

Amendment 10 provides that:

"The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, . . . nor shall any city council, board of aldermen, board of public affairs, or commissioners of any city of the first or second class, or any incorporated town, enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of

any contract or warrants, scrip, or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, of any city of the first or second class or incorporated town sign or issue any scrip, warrant or other certificate of indebtedness in excess of the revenue from all sources for the current fiscal year.'' The Amendment contains a similar limitation upon county indebtedness.

Amendment 13, among other things, limits the purposes for which cities of the first and second class may incur bonded indebtedness. The permissible purposes are set out in the third paragraph of the Amendment, and do not include the erection of factory buildings designed to aid in securing new manufacturing enterprises for a city, nor any equivalent purpose. Bonds for the permitted purposes may be issued only after the bond issue is approved by the electors at a municipal election. The seventh paragraph adds that ''No municipality shall ever grant financial aid toward the construction of railroads or other private enterprises operated by any person, firm or corporation . . .''

In *McCutchen v. Siloam Springs,* 185 Ark. 846, 49 S.W. 2d 1037, this Court held that a city might, without violation of Amendment 10, incur indebtedness greater than its annual revenues for the purchase of new facilities for its municipal water, light and power plant, where the contract of indebtedness provided that the city was not obligated to pay the debt out of any fund except the net earnings from the plant. The Court said: ''The consideration for this contract or the purchase price must and can only be paid under its terms as maintenance charges out of the gross receipts derived from the operation of the system after operating expenses have been paid, and not out of funds belonging to the city; hence the amendment referred to is not applicable to the instant contract, and not inhibited by it . . .'' The case also held that Amendment 13 was not violated. *McCutchen* v. *Siloam Springs* has been followed in several subsequent decisions, all holding that Amendment

10 does not prohibit the incurring of a debt larger than the current annual revenues of a municipality if the debt is secured and payable solely out of income or assets of the special and separable activity for which the debt is incurred. In such situations the indebtedness is not deemed to be that of the city within the sense of Amendment 10. *Jernigan v. Harris,* 187 Ark. 705, 62 S.W. 2d 5 (waterworks and sewage systems combined); *McGehee v. Williams,* 191 Ark. 643, 87 S.W. 2d 46 (waterworks distribution system). And see *Mississippi Valley Power Co.* v. *Board of Improvement,* 185 Ark. 76, 46 S.W. 2d 32.

Amendment 13 has received a similar interpretation. In *Snodgrass* v. *Pocahontas,* 189 Ark. 819, 75 S.W. 2d 223, one question was whether the city could lawfully issue bonds for the improvement of its waterworks system, the bonds to be payable altogether from waterworks revenues, without first holding the municipal election prescribed by Amendment 13. This Court held that the election was unnecessary, saying: "It was not the intention to prohibit cities and towns from making improvements and pledging the revenue from the improvements so made alone to the payment of the indebtedness. . . . where the debt is to be paid out of the receipts derived from the operation of the system, and not out of funds belonging to the city, the indebtedness is valid and not prohibited by Amendment 13." [1]

In the cases so far mentioned, the indebtedness was to be paid from the proceeds of the identical activity for which the indebtedness was incurred, and that fact was relied upon by this Court in each case in sustaining the transaction. In two other cases in Arkansas the incurring of indebtedness has been sustained where the debt was to be paid from the income of a municipal activity different from the one for which the expenditure was to be made.

The first of these two cases is *Johnson* v. *Dermott,* 189 Ark. 830, 75 S.W. 2d 243, 103 A.L.R. 581. The city

---

[1] Also see *Robinson* v. *DeValls Bluff,* 197 Ark. 391, 122 S. W. 2d 552, sustaining an issue of bonds for construction of a barge terminal, the bonds being secured by and payable from the assets and income of the barge terminal alone.

of Dermott, contracted to pledge the revenues of the municipal waterworks system to secure a loan from the proceeds of which it was proposed to construct a city hospital. It was not shown that the amount of the loan was in excess of the city's annual revenues, and it was clear that hospital construction was one of the purposes for which issuance of bonds was permissible under Amendment 13. In sustaining the hospital bond issue this Court said: "We conclude, therefore, that it is not beyond the power of the city to enter into a contract to erect a hospital and to segregate the revenues arising from the water and light systems and to pledge these excess revenues for that purpose. But this power may not be exercised in violation of Amendment No. 10 to the Constitution. Any contract which the city makes in regard to uncollected revenues from any source must be construed with reference to this amendment. Parties cannot, by pleadings or stipulations of any kind, abrogate this amendment which will be read into any contract which the city may make. This amendment provides that the fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and that no allowance shall be made 'for any purpose whatsoever in excess of the revenues from all sources for the fiscal year in which said contract or allowance is made.' Beyond this inhibition there is a lack of power to contract."

The other case is *City of Harrison* v. *Braswell*, 209 Ark. 1094, 194 S.W. 2d 12, 165 A.L.R. 845. It involved a city ordinance authorizing issuance of bonds for improvement of the city's water and sewer systems. Though the two systems were of course closely related they were technically separate, and the bonds were to be separate for each. The bonds of each were primarily payable from revenues derived from its own system, but in addition the ordinance provided that any surplus in one system might be applied to retirement of the bonds of the other. The validity of this plan was upheld.[2] A

---

[2] *Mathers* v. *Moss*, 202 Ark. 554, 151 S. W. 2d 660, which held invalid a city ordinance permitting payment of the City of Dumas sewer bonds from waterworks revenues, was distinguished on the ground that its basis for decision was the absence of statutory author-

careful reading of the record filed in *City of Harrison* v. *Braswell,* as well as of the opinion therein, reveals no definite assertion that the amount of the bond issue was greater than the total revenues of the city for the current year, therefore it may be assumed that the facts involved no violation of the portion of Amendment 10 quoted above. Besides, the maintenance of water and sewer systems constitutes so nearly one operation, so much of an inter-related activity (as contrasted with the light and power plant and the unrelated erection of a factory building proposed in the present case) that it would not be wholly unreasonable to regard them as a single activity within the constitutional concepts developed in Arkansas under Amendments 10 and 13.

It is apparent from the preceding analysis of our earlier cases that we are asked in this case to go further than this Court has yet been willing to go. We are asked to uphold a municipal bond issue for a purpose not authorized by Amendment 13, in an amount above the limit set by Amendment 10, to be repaid from the funds of a municipal activity other than that for which the expenditure is to be made. No municipal bond issue heretofore approved by this Court has involved that combination or one like it.

A comparable situation had developed when the case of *Luter* v. *Pulaski County Hospital Assn.,* 182 Ark. 1099, 34 S.W. 2d 770, came before the Court. The case involved a debt of $600,000, a sum larger than a single year's revenue of Pulaski County, to be undertaken by the County for the construction of a new hospital. The transaction was held to be unconstitutional, under the portion of Amendment 10 which sets up the same limits on indebtedness for counties as apply in the present case to cities. The Court pointed out that in earlier decisions it had been constrained, in view of the expensive and essential character of courthouses and jails, to permit counties to go in debt for them beyond the limits prescribed by Amendment 10, but that Amendment 17 had

ity therefor, whereas a subsequently enacted statute was deemed to authorize the Harrison bond issue in the form prescribed by the ordinance.

in 1929 eliminated that exception to Amendment 10, and no further exceptions should be engrafted upon it. The *Luter* case has been approved in a number of cases, including *Stanfield* v. *Friddle,* 185 Ark. 873, 50 S.W. 2d 237; and *Ozark* v. *Ozark Water Co.,* 190 Ark. 872, 81 S.W. 2d 920. Its holding is as applicable to that part of Amendment 10 which deals with cities as to that part, similarly worded, which deals with counties.

A clear purpose of Amendments 10 and 13 was the assurance of financial stability for cities in Arkansas. It was the deliberate intent of the people to make it difficult for cities, in periods of local enthusiasm, to undertake large debts which would bind the citizens and the municipalities' assets in years to come. Whether this purpose was good or bad, it is a part of the Constitution. Self-supporting municipal activities may in a sense borrow on their own credit, independently of the city's credit. They may even lend their credit for the benefit of other municipal activities when the constitutional debt limit will not thereby be exceeded and the benefited activity is one for which the city has constitutional authority to issue bonds. The present case would go further, however, and free municipal borrowing altogether from the fetters fixed by these amendments in any case where the debt was to be paid from particular income-producing municipal property rather than from taxation. If this were permitted, a city would by indirection be enabled to saddle upon legitimate municipal enterprises the burden of interest-bearing certificates of indebtedness in amounts forbidden by the Constitution, for purposes not authorized by the Constitution. This we hold the Constitution does not permit.

The independent prohibition in the seventh paragraph of Amendment 13, that "no municipality shall ever grant financial aid toward the construction of railroads or other private enterprises operated by any person, firm or corporation" is also applicable to the facts here. The complaint alleges that the bond issue is "for the purpose of *contributing to* the cost of a factory building to be built *in* the city of Clarksville for the purpose of securing the location of a new manufacturing enterprise in

said City'' (italics ours). This wording differs slightly from that which appears in the ordinance, but from the words used it could be inferred that some manufacturer, rather than the City itself, might be or become the owner of the factory when built. If that should ensue, this paragraph of Amendment 13 would also be violated.

We hold that Act 463 of the Acts of the General Assembly of 1949, insofar as it authorizes the adoption of Clarksville City Ordinance No. 388, is unconstitutional.

The decree of the Chancery Court is therefore reversed and the cause is remanded with directions that the defendant's demurrer be overruled.

GEORGE ROSE SMITH, J., concurring.