WAYLAND *v.* SNAPP.

5-2158                              334 S. W. 2d 633

Opinion delivered April 18, 1960.

58

*Knox Kinney,* for appellant.

*Fuller Highsmith, Mehaffy, Smith & Williams,* for appellee.

PAUL WARD, Associate Justice. Recently the City of Batesville voted overwhelmingly to issue $1,000,000.00 in Revenue Bonds under the provisions of Act No. 9 of the General Assembly, approved January 21, 1960, and Independence County (the county in which Batesville is located) voted to issue $500,000.00 in General Obligation Bonds under the provisions of Amendment No. 49 to the Constitution of Arkansas (adopted at the General Election on November 4, 1958). The overall purpose of the City and County in authorizing said bond issues was to secure and develop new industries and thereby relieve unemployment. The manner in which this objective was to be achieved will be set out more fully later.

This litigation tests the legality of the above proposed bond issues and the proposed development program based thereon. A Complaint was filed by Paul T. Wayland (appellant herein), a citizen and taxpayer of

Batesville and Independence County, against the County Judge of Independence County and also against the Mayor, Clerk and Aldermen of the City of Batesville, all of whom constitute the appellees herein. To said Complaint appellees filed a Demurrer on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained appellees' Demurrer, whereupon appellant declined to plead further, and on March 3, 1960, appellant's Complaint was dismissed. From such action of the trial court this appeal is being prosecuted.

*Complaint.* After identifying all of the parties heretofore mentioned, and after setting out portions of said Amendment No. 49 and said Act No. 9, the Complaint, in substance alleges:

1. Some time ago negotiations were undertaken with Seiberling Rubber Company, Inc., a corporation with headquarters in Barberton, Ohio, and sometimes called "Seiberling" for the location of a substantial manufacturing plant within Independence County, the purpose being to alleviate unemployment, to increase employment opportunities and to make available increased payrolls in the City of Batesville and Independence County — all for the best interest of said City and and County; it was agreed that Seiberling would locate and operate an industrial plant near the City of Batesville provided the City and the County acquired the necessary land and constructed the necessary manufacturing facilities thereon; it was determined by said City and County that to obtain such objective it would be necessary for the City to issue Revenue Bonds in the amount of $1,000,000.00 and for the County to issue General Obligation Bonds in the amount of $500,000.00; the City of Batesville proposes to lease said building and premises after the completion to Seiberling and the rentals therefrom are to be applied first to the payment of principal and interest on the Revenue Bonds issued by the City and thereafter redeem, prior to maturity, the bonds issued by the County under Amendment No. 49; with the proceeds derived from the bonds the City proposes to acquire the necessary

land and to construct the necessary manufacturing facilities thereon and then to lease the same to Seiberling with the base period of the lease to cover the life of the proposed issue and the County will levy and collect a tax of five mills on each dollar of assessed valuation to retire the General Obligation Bonds issued pursuant to Amendment No. 49. To carry out the above project the City of Batesville has adopted an Ordinance calling for a special election in regard to the Revenue Bonds, and Independence County (through the County Court) has entered an order calling for an election with reference to said General Obligation Bonds, attaching copies of said Ordinance and said Order.

2. The issue and maturity dates of said bonds are set out and it was then alleged that the annual rental to be paid by Seiberling under said lease would not be sufficient to meet the annual principal, interest and agent's fee requirements of both the Revenue and the General Obligation Bonds referred to above.

3. As security for the Revenue Bonds the City will mortgage the land and manufacturing facilities constructed thereon, the mortgage giving the bondholders the right of foreclosure in event of a default; in addition, the City will grant to a trustee for the bondholders the right to have a receiver appointed for said land and facilities with the right of lease, rent and operation of the same during the duration of any default; and also, as provided in said Act No. 9 the City will pledge all of its surplus utility revenue for the payment of the principal of and the interest on the said Revenue Bonds.

4. There is widespread unemployment in Independence County which would be alleviated by the subject project, however, the actions of the defendants in calling an election for the purposes above stated, the issuance of said bonds and the levying and collection of taxes for the payment of the same and entering into a long time lease with Seiberling, are all in violation of the Constitution and laws of the State of Arkansas in the following respects:

(The Complaint here sets out several specific Constitutional and legal objections. These are not copied for the reason that included therein are the points relied on by appellant for a reversal of this case. These points will be discussed later in the opinion.)

5. In the prayer of the Complaint the trial court is asked to declare that the actions heretofore taken by appellees and actions proposed to be taken by them are unauthorized by and are contrary to the laws and Constitution of the State of Arkansas.

For a reversal appellant relies upon the following points: (1) The proposed issuance of bonds by appellees constitutes a violation of Article 12, Section 5, and Article 16, Section 1, as amended by Amendment No. 13, of the Arkansas Constitution; (2) Act No. 9 authorizes municipalities and counties to engage in activity and issue bonds for purposes which are not public, and, thus, is contrary to the Arkansas Constitution; (3) The proposed action of Independence County in making available proceeds of bonds issued under Amendment No. 49 for the construction of facilities to be owned by the City of Batesville is unauthorized by and contrary to said Amendment No. 49; (4) Since Act No. 2 requires that counties and municipalities engaging in cooperative efforts to secure industry form compacts, the failure to do so in this case causes the proposed method of financing to be invalid. (5) The contemplated pledge of surplus municipal utility revenues is contrary to Amendment No. 10 to the Arkansas Constitution; (6) The proposed granting of a forecloseable mortgage lien and the right to appointment of a receiver contrary to the laws of the State of Arkansas; (7) The representation that the manufacturing facilities in question will be exempt from ad valorem taxation and the proposed action of the City and County to implement the representation are contrary to Article 16, Sections 5 and 6, of the Arkansas Constitution; and (8) The proposed method of financing, constructing, leasing, taxing and applying funds and lease rentals is unauthorized and contrary to the Constitution and laws of the State of Arkansas.

We have given careful consideration to the exhaustive and well-presented arguments and authorities contained in the brief of appellant and the brief of appellees, but find ourselves in disagreement with appellant's conclusions on each and every point. There being no issue of fact involved, we proceed now to examine separately each of the points relied upon by appellant for a reversal:

## (1)

*The proposed issuance of bonds by appellees constitutes a violation of Article 12, Section 5, and Article 16, Section 1, as amended by Amendment No. 13 of the Arkansas Constitution.* Although appellant, in the above statement, uses the plural in referring to appellees we will assume that his main contention relates to the City and not to the County. We say this because it is hard to understand how it could be logically contended that Amendment No. 49 conflicts with or in any way violates the sections of the Constitution referred to. It is understood by all, of course, that the General Obligation Bonds which the County proposes to issue are being issued under the authority granted in Amendment No. 49.

As it relates to the Revenue Bonds to be issued by the City of Batesville, Article 12, Section 5 of the Constitution, in all parts material here, reads: "No county, city, . . . shall become a stockholder in any company, association, or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual." Article 16, Section 1 of the Constitution, in all parts material here, reads: "Neither the State nor any city . . . in this State, shall ever lend its credit for any purpose . . ." For the purpose of this opinion Amendment No. 13 to the Constitution reads the same as Article 16, Section 1.

The Revenue Bonds to be issued by the City of Batesville in this instance are not, of course, a general obligation of the City. That is, the bonds will not be retired by levying any kind of tax upon the people of Batesville,

but they will be retired from revenues derived from lands, buildings, and facilities as well as from surplus revenues derived from certain utilities owned by the City (as described in Section 6 of said Act No. 9). Revenue Bonds, as distinguished from General Obligation Bonds, have been approved many times by this Court for public financing. Among other cases see *Jernigan v. Harris,* 187 Ark. 705, 62 S. W. 2d 5; *McGehee v. Williams,* 191 Ark. 643, 87 S. W. 2d 46; *Robinson v. The Incorporated Town of DeValls Bluff,* 197 Ark. 391, 122 S. W. 2d 552; *Austin v. Manning, Mayor,* 217 Ark. 538, 231 S. W. 2d 101; and *McCutchen v. Siloam Springs,* 185 Ark. 846, 49 S. W. 2d 1037. Likewise, this Court has repeatedly held that the issuance of revenue bonds, being special bonds as distinguished from general obligation bonds, does not violate any of the Constitutional provisions contained in the sections relied on here by appellant. See: *Snodgrass v. Pocahontas,* 189 Ark. 819, 75 S. W. 2d 223, wherein the Court stated at Page 824 of the Arkansas Reports: ''It was manifestly the intention of the framers of Amendment No. 13 to prohibit cities and towns from issuing interest-bearing evidences of indebtedness, to pay which the people would be *taxed, or their property appropriated to pay the indebtedness,* or any indebtedness that placed any burden on the taxpayers. It was not the intention to prohibit cities and towns from making improvements and pledging the revenue from the improvements so made alone to the payment of the indebtedness.'' (Emphasis supplied.) It is clear in the case under consideration that the Revenue Bonds to be issued by the City of Batesville can never be a burden on the taxpayers, but that they must be paid alone from the revenue derived from the building and from the surplus revenue above mentioned. The legality of the pledging of the latter mentioned revenue will be discussed later.

The issuance of revenue bonds under statutes similar to Act No. 9 of 1960 have been upheld in other jurisdictions. See *In Re Opinion of the Justices,* 254 Ala. 506, 49 So. 2d 175; *In Re Opinion of the Justices,* 256 Ala.

162, 53 So. 2d 840; and *Newberry* v. *City of Andalusia,* 257 Ala. 49, 57 So. 2d 629.

Nor do we agree with appellant's assertion that the Revenue Bonds issued by the City of Batesville are for the benefit of a private corporation. Even though Seiberling may reap some benefit, yet such benefit is merely incidental and the main benefits are those to be derived by the people of Batesville and Independence County under the provisions of Act No. 9 and Amendment No. 49.

### (2)

*Act No. 9 authorizes municipalities and counties to engage in activity and issue bonds for purposes which are not public, and, thus, is contrary to the Arkansas Constitution.* Again we assume that appellant has reference to the Revenue Bonds since the bonds issued by the County could not be in violation of the Constitution since they are being issued in accordance with part of the Constitution, that is, Amendment No. 49. Section 2 of said Act No. 9 reads as follows: "Any municipality and any county is hereby authorized to own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise, deal in or dispose of any land, buildings, or facilities of any and every nature whatever that can be used in securing or developing industry within or near the municipality or county." We take appellant's argument to mean that the act of "securing or developing industry" is not a public purpose. There are several reasons why we cannot agree with this contention. In the first place, Section 1 of Amendment No. 49 makes such an activity a public purpose. Not only so but the courts seem to be in agreement that such activity constitutes a public purpose. In the case of *Albritton* v. *Winona,* 181 Miss. 75, 178 So. 799, 115 A. L. R. 1436, the Court said:

"The care of the poor, the relief of *unemployment,* and the promotion of agriculture and industry are undoubtedly proper governmental purposes and are so recognized everywhere and by all." (Emphasis supplied.)

For similar holdings see *Newberry* v. *City of Andalusia, supra; Dyche* v. *City of London*, (Ky.), 288 S. W. 2d 648; *Miller* v. *Police Jury of Washington Parish*, 226 La. 8, 74 So. 2d 397; and *Steward Machine Company* v. *Davis*, 301 U. S. 548, 57 S. Ct. 883, 81 L. Ed. 1279.

## (3)

It is appellant's contention that the proposed bond issue under Amendment No. 49 by the County is illegal because the County will not hold title to the building to be erected and also because the County will not reap the benefits. We are cited no authority to support this contention and we see no merit in it. This Court had occasion to consider the purpose of Amendment No. 49 in the case of *Myhand* v. *Erwin*, 231 Ark. 444, 330 S. W. 2d 68, decided December 21, 1959. In that case there was an undertaking to sell bonds under Amendment No. 49 to build a road to a site where Potlatch Forests, Inc. proposed to build a factory. The first objection raised on appeal was "that benefits from the proposed road will not be confined to Potlatch Forests, Inc., but will likewise benefit members of the traveling public." In reply the Court said: "We do not agree with appellant's contention. It is true that some members of the public may use the road, but the fact that benefits cannot be isolated, is no reason to preclude such benefits for those who properly come within the scope of the amendment, as envisioned by the people in adopting same. This Court has been liberal in its construction of constitutional amendments, so as to carry out the obvious purpose of the people in adopting the amendments." Following the above the Court announced the principle that there was an implied authority to employ reasonable means to carry out the purpose of the amendment.

It must be admitted too that the prime objective to be achieved by the people of Independence County, in this entire undertaking, was not just to erect a building but it was to alleviate unemployment. If this objective is achieved it is obvious that the County, including the City of Batesville, will reap the benefits. It is well es-

tablished, of course, that the City has a right to own property and to hold the title to same in any situation unless it is prohibited from doing so by statute or the Constitution. We know of no such prohibition in this case.

## (4)

We are not convinced by appellant's argument that the methods here proposed to issue bonds are illegal because the provisions of Act No. 2 of the First Extraordinary Session of 1960 were not followed. Said Act No. 2, among other things, provides in effect that two counties, two cities (whether or not in the same county) and a city and a county are "authorized and empowered" to join together in a compact to secure industries, etc. It is apparent, of course, that Act No. 2 did not compel the City of Batesville and Independence County to form a compact but merely authorized them to do so if they so desired. The ultimate implication of appellant's argument is that Amendment No. 49 cannot stand alone but must be implemented, in this instance, by Act No. 2. Such argument is not sound because this Court has already decided in the *Myhand* case, *supra,* that Amendment No. 49 is self-executing. In that case it was also decided that it was proper to proceed under the provisions of Amendment No. 49 independently of Act No. 121 of 1959. The same process of reasoning leads us to conclude that, likewise, appellees can here proceed under Amendment No. 49 independently of said Act No. 2. Act No. 9 of the First Extraordinary Session of 1960, under which the City proposes here to issue revenue bonds is likewise independent of Act No. 2. Consequently, we see no valid objection to the City operating under Act No. 9 and the County operating under Amendment No. 49, both independently of Act No. 2.

## (5)

One of the most troublesome questions presented to us on this appeal is the one that grows out of the attempt by the City of Batesville to pledge the surplus revenues of municipally owned utilities to secure the pay-

ment of the proposed Revenue Bonds. It is the earnest contention of appellant that this attempt by the City of Batesville violates Amendment No. 10 to the Arkansas Constitution, and particularly as that amendment has been construed by this Court in the case of *Williams* v. *Harris, Mayor*, 215 Ark. 928, 224 S. W. 2d 9. The parts of Amendment No. 10 which are pertinent here are the following:

"The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis . . . nor shall any city . . . enter into any contract or make any allowance for any purpose whatsoever or authorize the issuance of any contract . . . or other evidences of indebtedness in excess of the revenue for such city or town for the current fiscal year . . ."

It is readily conceded by appellees that for the year 1960 the proposed bond issue in the amount of $1,000,000.00 (together with other necessary city expenses) will exceed the total revenues of the City for said year. In the *Williams* case, *supra,* this Court gave a rather strict interpretation of Amendment No. 10 which, according to appellant's contention, invalidates the proposed bond issue in this case. In the cited case the City of Clarksville attempted to pledge the net revenues of its electric light and power plant to the payment of bonds issued for the purpose of securing a new manufacturing enterprise for the city. The attempted pledge was held unconstitutional by this Court in an opinion, which, in part, used this language:

"Self-supporting municipal activities may in a sense borrow on their own credit, independently of the city's credit. They may even lend their credit for the benefit of other municipal activities when the constitutional debt limit will not thereby be exceeded and the benefited activity is one for which the city has constitutional authority to issue bonds. The present case would go further, however, and free municipal borrowing altogether from the fetters fixed by these amendments in any case where the debt was to be paid from particular income-producing municipal property rather than from taxation.

If this were permitted, a city would by indirection be enabled to saddle upon legitimate municipal enterprises the burden of interest-bearing certificates of indebtedness in amounts forbidden by the Constitution, *for purposes not authorized by the Constitution.*" (Emphasis supplied.)

It was pointed out in the *Williams* case, *supra,* that the prohibition against pledging surpluses in excess of the constitutional prohibition (contained in Amendment No. 10) did not apply where the pledged revenue was for the purpose of repairing, improving or extending the subject utility or where there was a close similarity between that utility and the one receiving the benefits of the revenue. It must, of course, be admitted that in the case under consideration there was no such close resemblance and it must be conceded that, if this case had followed immediately after the decision in the *Williams* case, *supra,* that decision would be fatal to appellees' contentions in this case.

In our opinion, however, the case under consideration is distinguishable from the *Williams* case, *supra,* in at least two respects:

(1)  We think the words italicized in that portion of the opinion copied above were used advisedly and are important to consider in connection with this case. The City of Clarksville was proceeding under statutory authority (Act No. 463 of 1949) while in the case under consideration the City of Batesville is proceeding under Constitutional authority (Amendment No. 49). Amendment No. 49, of course, was not in existence when the *Williams* decision was rendered.

(2)  The people of Arkansas have for the third time decided that the provisions of Amendment No. 10 were too stringent and that the affairs of cities and counties cannot be successfully conducted within the limitations contained therein. In 1926 the Constitution was amended (Amendment No. 13) to provide for the development, improvement of public parks, flying fields, etc. None of these things could have been accomplished under

Amendment No. 10. Again in 1928, by Amendment No. 17, provision was made by which the county could construct and reconstruct a courthouse, a jail or a county hospital. The opinion in the *Williams* case noted: Amendment No. 13, among other things, limits the purposes for which cities of the first and second class may incur bonded indebtedness. The permissible purposes are set out in the third paragraph of the Amendment and do not include the *erection of factory buildings* . . ." (Emphasis supplied.) The implication, of course, is that if Amendment No. 13 had included those things then the bond issue in that case would have been legal and Constitutional. In this case it is our conviction that Amendment No. 49 also broadens the scope of Amendment No. 10 and authorizes the issuance of revenue bonds for the express purpose of alleviating unemployment. The first section of Amendment No. 49 reads in part: "Any city . . . may issue bonds . . . for the purpose of securing and developing industry . . ." Thus we find direct, positive authorization for the City of Batesville to issue revenue bonds. It is argued by appellant, however, that Section 1 of Amendment No. 49 must be read in connection with Section 3 and that when so read the Amendment only authorizes the issuance of bonds where they are to be retired from the levy of a special tax. In this we think appellant is in error as a casual reading of Section 3 discloses. While Section 1 of the Amendment authorizes the issuance of such bonds, Section 3 merely provides a permissible way for the retirement of the bonds. The pertinent portion of Section 3 reads as follows: "To provide for the payment of such bonds . . . the municipality or county *may* levy a special tax . . ." (Emphasis Supplied). Section 3 does not say that a tax *must* be levied in every instance where bonds are issued. We feel that this conclusion can be justified without resorting to a liberal interpretation of Amendment No. 49 which, as we have pointed out previously, is permissible. If the people of Arkansas were willing (as they were) to burden themselves with a tax (as they did in Amendment No. 49) then it is reasonable to think they intended, and were

willing, to pledge surplus revenues all in order to try to alleviate unemployment.

(6)

In appellant's brief this statement is made: "It is appellant's position that Act No. 9 does not (a) authorize the granting of a foreclosable mortgage and that if it does (b) it is contrary to Amendments No. 10 and No. 13 to the Arkansas Constitution."

(a) It seems that Section 8 of Act No. 9 refutes the first argument. In that section we find this language:

"There shall be created a statutory mortgage lien upon the land, buildings and/or facilities acquired or constructed with the proceeds of said revenue bonds which shall exist in favor of the holders of said bonds, and in favor of the holders of the coupons attached to said bonds. The land, buildings and/or facilities shall remain subject to such statutory mortgage lien until payment in full of the principal and interest of said revenue bonds." Insofar as enforceable rights are given to the bondholders we can see no substantial difference between the legal effect of the language copied above from Act No. 9 and the language used in appellant's complaint with reference to the mortgage that is to be given, where it is stated: "As security for the revenue bonds to be issued by it, the City of Batesville will mortgage the land and manufacturing facilities constructed thereon, which mortgage will grant to the Trustee for the City's said bondholders and to said bondholders the right of foreclosure in the event of a default . . ." Thus, there is, we think, ample authority in Act No. 9 for the City to execute the mortgage when the time comes to do so.

(b) The objection by appellant that the right to foreclose could result in the violation of Amendments No. 10 and No. 13 of the Constitution has been answered under Point 5 above and no further comment is necessary.

Appellant further contends that if the right of foreclosure is granted, any attempt by the bondholders to

foreclose would amount to a suit against the State contrary to Article 5, Section 20 of the Constitution of Arkansas.

We cannot concur in appellant's contentions. The general rule seems to be that the Legislature has the power to authorize a suit against a municipality. In Rhyne's book on "Municipal Law", published in 1957, this rule is repeatedly announced and sustained by a host of authorities. At Page 382, Section 16-12, Mr. Rhyne, after stating the general rule that property held by a municipality in its governmental capacity is immune from execution and sale for non-payment of debts, makes this statement: "On the other hand, it has been held that if a municipality has the power to mortgage its property it is subject to foreclosure on the breach of the condition." Mr. Rhyne further stated (Page 806) that a city, when acting in its governmental capacity is immune to being sued EXCEPT when and if authorized by statute. Although our research has not disclosed any decision of this Court directly in point we are led to conclude from a statement made in *Watson* v. *Dodge,* 187 Ark. 1055, 63 S. W. 2d 993, that we will follow the principle above announced. In that case the Court, after affirming the well established rule that the State cannot be sued, made this statement: "Any departure from this rule, except for reasons most cogent (of which the *Legislature,* and not the courts, is the judge) . . ." (Emphasis supplied.) Confirming the above, see *St. Paul-Mercury Indemnity Company* v. *City of Hughes,* 231 Ark. 530, 331 S. W. 2d 106.

## (7)

In his Complaint appellant alleges that: "The City of Batesville has respresented to Seiberling that the land and manufacturing facilities to be leased to Seiberling by the City will be exempt from ad valorem taxes" in violation of Article 16, Sections 5 and 6 of the Arkansas Constitution. Said Section 5, in all pertinent parts, reads as follows: "All property subject to taxation shall be taxed according to its value . . . provided further

that the following property shall be exempt from taxation: Public property used exclusively for public purposes.'' Section 6 states that: ''All laws exempting property from taxation other than as provided in the Constitution shall be void.'' It is then stated that neither Act No. 9 or Amendment No. 49 makes any references to tax exemption. In this statement appellant is correct, however, those facts appear to us to be beside the point. As we understand the above provisions of the Constitution, for property to be exempted from taxation two elements must be present: (a) the subject property must be ''public property'', that is, it must be owned (in this instance) by the City of Batesville; (b) it must be used exclusively for public purposes. In our opinion both of these elements are present in the case under consideration as we shall attempt to show.

(a)   It must be admitted here that the grounds, the building and facilities will be owned by the City of Batesville and will, therefore, be public property.

(b)   Likewise, we think it is clear that the property will be used exclusively for a public purpose. If it is, it will be exempt from taxation under the Constitution and if it is not it must be taxed. After careful thought and consideration we cannot escape the conclusion that the whole purpose, and the only purpose, for the adoption by the people of Amendment No. 49, the passage by the Legislature of Act No. 9, and the efforts of the people of Batesville and Independence County (in attempting to implement said Amendment and said Act) was for the public welfare — obviously and undoubtedly a ''public purpose''. This result would follow only where the title to property is acquired and the property itself is used by a city or county (or by both) pursuant to Act No. 9 and/or Amendment No. 49.

It cannot be said that any part of the entire program was meant for any other purpose, and certainly not for the purpose of benefiting Seiberling. Any benefit Seiberling may receive from this entire undertaking will be entirely incidental it seems to us.

As to the second objection, obviously, Section 6 of Article 16 has not and will not be violated if, as we have held above, Section 5 has not been violated.

(8)

Finally, appellant makes a general objection to the method he conceives will be used in regard to the financing, constructing, leasing, taxing and applying funds and lease rentals. It is stated that there is no authorization in the Constitution or the statutes for the employment of these methods. Appellant does not indicate in just what way these activities will be unlawful or unconstitutional and we know of none. We believe that all of the objections raised under this point have been disposed of in our discussion of the previous points and that no further commentary is necessary or will be useful.

It is our conclusion, therefore, that the decree of the trial court in dismissing appellant's Complaint should be, and it is hereby, affirmed.

Affirmed.

McFADDIN and GEORGE ROSE SMITH, JJ., dissent.

GEORGE ROSE SMITH, J., dissenting. I am unable to agree with the majority's conclusions upon the fifth and seventh points.

In holding that the proposed pledge of surplus utility revenues does not violate Amendment 10 the majority not only have disregarded the distressing financial experiences that brought about the adoption of that Amendment but also have in effect overruled our earlier decisions upon the subject. I regard those decisions as sound and would stand by them.

Before the adoption of Amendment 10 cities and counties were permitted to make purchases on credit and to pledge the expected revenues of future years as security for current obligations. It was then common knowledge, and is now familiar history, that many local governments traveled this avenue of deficit financing to the point of

insolvency. Warrants and other scrip issued by those local governments could not be paid immediately and at par, for cash was not available. The holder of public paper either had to sell it at a discount or keep it for months or years until its turn for payment was reached. In this situation public employees were compelled to work for a discounted salary. As might be expected, the cities and counties were overcharged for everything they bought, for the seller increased his price to offset the depreciated value of the public currency.

By their approval of Amendment 10 the people expressed their determination to bring about a sound system of local governmental financing. The amendment put the cities and counties upon a pay-as-you-go basis, limiting their permissible obligations to the revenues of the current year. The only exception in the amendment permitted the funding of existing indebtedness by means of a bond issue secured by a special three-mill tax levy. Later on Amendment 13 permitted cities to issue bonds, secured by a five-mill tax, for several specified public improvements, and still later Amendments 17 and 25 allowed the counties to issue bonds, secured by a five-mill tax, for the construction of courthouses, jails, and hospitals. And now Amendment 49 authorizes the issuance of bonds, secured by a five-mill tax levy, for the development of new industries.

Until today's decision this court had adhered to the spirit of Amendment 10. One of the earlier cases, *Johnson* v. *Dermott*, 189 Ark. 830, 75 S. W. 2d 243, is almost identical with the case at bar. There the city of Dermott sought to pledge the surplus revenues from its electric light plant to secure a loan for the construction of a hospital—an improvement specifically permitted by Amendment 13. (In like manner the city of Batesville now seeks to pledge similar surplus revenues to secure a loan for a purpose permitted by Amendment 49.) We held that a profit from the operation of a municipally owned utility constituted income that might be used for general purposes, but it was subject to the restrictions of Amendment

10. This language in the opinion should control the case at bar:

"We conclude, therefore, that it is not beyond the power of the city to enter into a contract to erect a hospital and to segregate the revenues arising from the water and light systems and to pledge these excess revenues for that purpose. But this power may not be exercised in violation of Amendment 10 to the Constitution. Any contract which the city makes in regard to uncollected revenues from any source must be construed with reference to this amendment. Parties cannot, by pleadings or stipulations of any kind, abrogate this amendment which will be read into any contract which the city may make. This amendment provides that the fiscal affairs of counties, cities, and incorporated towns shall be conducted on a sound financial basis, and that no allowance shall be made 'for any purpose whatsoever in excess of the revenues from all sources for the fiscal year in which said contract or allowance is made.' Beyond this inhibition there is a lack of power to contract."

The cases were reviewed in *Williams* v. *Harris,* 215 Ark. 928, 224 S. W. 2d 9, where the city of Clarksville wished to pledge surplus utility revenues for the payment of bonds to be issued for the attraction of a new industry. We held that the proposal violated the constitution in three respects: (a) It was for a purpose not authorized by the constitution; (b) it was "in an amount above the limit set by Amendment 10"; and (c) it involved a pledge of future utility revenues for an undertaking not connected with the utility. It is true, as the majority point out, that Amendment 49 has satisfied the first defect, the absence of constitutional authorization, but the other two objections still remain. Thus the majority's holding is directly contrary to both of the cases just cited.

Amendment 49 was needed to accomplish its purpose, because there were several provisions in the constitution (not merely Amendment 10) that prevented the issuance of bonds to attract industry and the levy of a property tax to pay those bonds. By its language the amendment is

directed only to the authorization of bond issues. Literally every sentence in this rather long amendment not only refers to, but also deals solely with, either the bonds themselves or the election at which they are to be voted upon. I find not one syllable in Amendment 49 to warn the voters that in approving the amendment they were partially repealing a basic safeguard previously placed upon local governmental financing. By the majority's reasoning one might as well say that the guaranty of free speech was also repealed to the extent that such speech might interfere with the acquisition of new industry. Industrial development is a worthwhile purpose; Amendment 49 should be liberally construed. I cannot, however, share the majority's belief that the people, in approving Amendment 49, meant to run roughshod over any other constitutional provision that might in practice hamper the most zealous of efforts to attract new industry.

The seventh point, involving the tax exemption of the new plant and its grounds, is not made absolutely clear by our prior decisions, but if the point is to be determined I think we should say that this property will be taxable. Were the matter left up to me I would not pass upon the question at all, for no justiciable issue is presented. The complaint merely asserts that the city has represented to Seiberling that the lands and facilities will be tax-exempt, and this representation is said to be contrary to the constitution. There is no actual controversy between these parties; we are simply being asked to give advice upon an abstract question of law that may arise if the taxing authorities seek to tax this property and if the city decides to resist the tax. It is not our duty, even under the declaratory judgment act, to pass upon academic questions. The majority, however, apparently think it best to give advice in this instance; so I must set forth my reasons for thinking it to be bad advice.

The constitution exempts "public property used exclusively for public purposes." Const., Art. 16 § 5. Obviously the framers did not mean to exempt all public property, for in that event there would have been no need to insert the phrase, "used exclusively for public pur-

poses.'' The inclusion of that phrase demonstrates conclusively that the exemption does not embrace all publicly owned property; it must also be used exclusively for a public purpose.

The question was thoroughly considered in *School District of Ft. Smith* v. *Howe,* 62 Ark. 481, 37 S. W. 717, where the school district owned property which was rented to private tenants, with the rents being used for school purposes. In holding that the property was subject to taxation we said: ''It seems clear that the intention was to exempt only that public property which in itself directly subserved some public purpose by actual use, as distinguished from property belonging to the public but not used by it, and from which a benefit accrues to the public, not by the immediate use thereof by the public, but indirectly through selling or renting the same to private parties. To illustrate: Some of these lots have buildings upon them, and are rented to different tenants. One may be rented to a grocer, another to a butcher, and another to a saloon keeper. Although the object and effect of renting the property in such cases may be a benefit to the public, yet we cannot say that such property is used exclusively for public purposes. . . . The purpose for which these tenants use this property is their own private gain, and the fact that they pay rents to the public does not change the purpose of this use from a private to a public one.''

We have many other cases to the same effect, holding that the tax exemption must be strictly construed and that property falls within one of the exemptions only if it is actually used for the exempt purpose. *Brodie* v. *Fitzgerald,* 57 Ark. 445, 22 S. W. 29; *Pulaski County* v. *First Baptist Church,* 86 Ark. 205, 110 S. W. 1034; *Burbridge* v. *Smyrna Baptist Church,* 212 Ark. 924, 209 S. W. 2d 685; *Hilger* v. *Harding College,* 231 Ark. 686, 331 S. W. 2d 851. The only contrary decision, *Hogue* v. *Housing Authority of North Little Rock,* 201 Ark. 263, 144 S. W. 2d 49, was, like the case at bar, based upon expediency, as the dissenting opinion of Judge Frank Smith pointed out. The *Hogue* case cited none of our decisions to support

its holding on this point. It has not been followed in later cases and does not, in my opinion, represent the law in Arkansas.

The majority disregard the constitutional requirement that the property be used *exclusively* for public purposes. Are we to say that Seiberling is not using the property at all, even though it is occupying it for the sole purpose of private gain? Of course not. Seiberling's business will incidentally redound to the public's benefit by reducing unemployment, but the same thing is true of any established business concern which owns or leases its site of operations. If the mere reduction of unemployment constitutes an exclusively public purpose then all the commercial property in the state should be declared to be exempt from *ad valorem* taxation.

Counsel for the appellees present a plausible argument to the effect that if the original purchase by the city and county can be justified as being for a public purpose it should follow that the use by Seiberling is also for a public purpose. This argument overlooks the fact that the constitutional reference to a tax-exempt public purpose is much narrower than many other senses in which the phrase may be used. For example, the power of eminent domain can be exercised only for a public purpose. Hence a railroad company is acting for a public purpose when it condemns a right of way for its tracks, but no one would suppose that the property is therefore tax-exempt after the railroad company acquires the title.

I regret that I cannot express more effectively my strong disagreement with the majority opinion in this case.

McFADDIN, J., joins in this dissent.