The Honorable Keith Wood State Representative P.O. Box 1122 Hope, Arkansas 71801-1122
Dear Representative Wood:
This is in response to your request for an opinion on several questions concerning equipment or personal property financed with "Act 9 revenue bonds," and the tax exempt status of such property. You reference "Act 9," which is Act 9 of 1960, as amended, codified at A.C.A. §§ 14-164-201 -224, and Amendment 65
to the Arkansas Constitution.
Your first question is as follows:
 1. While the term `capital improvements' in Act 9 clearly encompasses improvements to real property, what specific types, if any, of personal property are considered `capital improvements' which may be purchased with bond monies?
Some explanation is necessary prior to answering this question. The term "capital improvements" is not used in Act 9. This act, rather, uses the term "facilities" for the securing and developing of industry,[1] as does A.C.A. §§ 14-164-501
508. "Facilities" is defined in Act 9 as follows:
 Facilities means any real property, personal property, or mixed property of any and every kind that can be used or that will be useful in securing or developing industry, including, without limiting the generality of the foregoing, rights-of-way, roads, streets, pipes, pipelines, reservoirs, utilities, materials, equipment, fixtures, machinery, furniture, furnishings, instrumentalities, and other real, personal, or mixed property of every kind.
A.C.A. § 14-164-203(7). See also A.C.A. § 14-164-504(7).
Amendment 65 also uses the term "facilities" as follows: "[A]ny governmental unit . . . may issue revenue bonds for the purpose of financing all or a portion of the costs of capital improvements of a public nature, facilities for the securing anddeveloping of industry or agriculture. . . ." [Emphasis added.] Amendment 65, § 1.
Thus under Act 9, the relevant term is "facilities," and this term has been defined very broadly by the legislature to include equipment and "real, personal, or mixed property of every kind."
Your second question is as follows:
 If machinery and equipment are purchased with bond monies and the lease agreement between the issuing body and manufacturer places the responsibilities for repair and replacement of said property on the lessee, must bond monies be set aside as a reserve in order for the property tax exemption to apply to replacement equipment, or might the lessee make repairs and replacements with other monies without losing the property tax exemption?
This question will require reference to the facts of particular circumstances and lease agreements, and that is why it is appropriately left to the local assessor, whose duty it is to determine tax exempt property. A.C.A. § 26-26-1001. It may be that the provision of a particular lease, placing "responsibility" on the lessee for replacement and repair, means exactly that, i.e., that the payment for replacement parts and for repair is left up to the manufacturer, and the issuing body is not involved at all in the payment for these repairs or replacements. This will, of course, depend upon the particular lease agreement. If this is the case, new separately assessable property, if it is not publicly owned, will not be entitled to a tax exemption. There may be a distinction, therefore, between "repair" and "replacement." It is up to the local assessor to determine whether tax-exempt equipment that is being repaired with new privately purchased property has thereby lost its tax exemption. The question, in my opinion, will likely turn upon the extent of the repair, and the extent to which the repair changes the character of the property from publicly owned to privately owned. This will depend upon individual facts. New separately assessable equipment which replaces old equipment, if purchased and held privately, will not be tax exempt if not publicly owned.See Wayland v. Snapp, 232 Ark. 57, 334 S.W.2d 633 (1960).
If, however, new replacement equipment can, under the lease agreement, be purchased with bond monies, it is conceivable that reserve monies could be used, and the tax exemption retained. This will depend upon the particular circumstances. As a general rule, however, for property to be tax exempt it must be both 1) publicly owned, and 2) used exclusively for public purposes.See Arkansas Constitution, art. 16, §§ 5 and 6, and Wayland v.Snapp, supra. Your question involves the first requirement. The tax exempt status of the property will thus turn upon whether it is publicly owned.
Your third question is as follows:
 Must personal property be specifically identified in the lease agreement in order for its purchase to be made with bond proceeds?
In my opinion, the answer to this question is "no." There are no provisions in the statutes governing the method of leasing or contracting with respect to these facilities. I assume your question refers to property which is acquired after the execution of the initial lease agreement. The issuing body is free to purchase, with bond monies, any equipment which is within the purpose for which the bonds were issued. It will, in all likelihood, lease the equipment to a manufacturer and may amend the lease agreement, or execute a separate lease agreement with regard to this equipment. There is, however, no requirement that this new equipment be in the original lease agreement, or in fact, that its lease be in writing at all. If property is publicly owned, however, and is being used by a local private industry, it is probable that there exists some lease agreement or other contract arrangement between the public and private entities, whether written or verbal, express or implied. Again, this is a question which will depend on the particular facts.
Your fourth question is as follows:
 If such properties are not so identified in the lease yet purchased with bond monies then intermingled with property purchased with non-bond monies of the manufacturer, is the tax exempt status lost or can it be pro-rated?
Again, this question will be left up to the local assessor. The extent to which a mixture of exempt and non-exempt property will be exempt from taxes will involve factual considerations. The issue will turn upon whether the "intermingled" property is still publicly owned, or whether it has now become private property, and as such, taxable.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] The term "capital improvements of a public nature" is used in Amendment 65 and two separate subchapters: A.C.A. §§14-164-301 -307 (tax backed bonds), and 14-164-401 -418 (revenue bonds). Each of these subchapters were enacted originally in 1985, much later than Act 9, which was enacted in 1960.