HILGER *v.* HARDING COLLEGE.

5-2014                                    331 S. W. 2d 851

Opinion delivered February 15, 1960.

*C. E. Yingling, Lloyd Henry,* for appellant.

*Rose, Meek, House, Barron & Nash,* for appellee.

PAUL WARD, Associate Justice. On this appeal we are called upon to decide whether certain personal property and certain real property belonging to Harding College are exempt from taxation under Article 16, Section 5, of the Constitution of the State of Arkansas. Harding College (hereafter referred to as ''College'') is a non-profit corporation organized under the laws of the State of Arkansas and is operating a school under the name first above mentioned in the City of Searcy, Arkansas. The College campus and all buildings erected thereon are not being assessed for taxation. On the campus the College maintains and operates a printing shop and a laundry. The College also owns, in addition to the above, approximately 19 separately described parcels of land consisting of more than 400 acres. On a portion of this acreage the College owns and operates a dairy.

The equipment used in connection with the printing shop and the laundry and all of the real estate last above described were assessed for taxes for the year 1957. The County Clerk had extended the taxes on the tax record for said year against the said equipment and the real estate acreage; the Collector is demanding that said taxes be paid; and, unless the taxes are paid the equipment and land will be sold.

This litigation was instituted by the College against the Tax Collector, the Assessor and the County Clerk of White County asking the Chancery Court to cancel the 1957 assessments; to restrain the Assessor from assess-

ing and extending future taxes against said equipment and land, and to restrain the Collector from selling said equipment and lands for non-payment of taxes assessed for the year 1957. All the relief prayed for by the College was granted by the trial court, and this appeal follows.

The decision in this case rests within the interpretation given to Article 16, Section 5, of the Constitution of this State. This section, after first asserting that all property shall be taxed uniformly and according to its value, provides that the following mentioned property shall be *exempt* from taxation: "Public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; *school buildings and apparatus;* libraries and *grounds used exclusively for school purposes;* and buildings and grounds and materials used exclusively for public charity". (Emphasis Supplied). It is here noted that Section 6 of the Article above mentioned provides that "All laws exempting property from taxation other than as provided in this Constitution shall be void".

A copy of the Articles and Agreement of Incorporation of the College were introduced in evidence and are a part of the record on this appeal. The first paragraph states in effect that the incorporators were acting on and in pursuance of the laws of the State of Arkansas for "incorporation of an educational institution". It is clear, we think, that the "laws of the State" mentioned above refer to Ark. Stats. 64-1401. This statute relates to the establishment and maintenance of "any institution of learning", etc. The section immediately following the above section provides that "the purpose for which every such corporation shall be established shall be directly specified in said articles of incorporation and it shall not be lawful for said corporation to divert or appropriate its funds or property for any other purpose", etc. Article 4 of the Articles of Incorporation sets forth the purpose for which Harding College was incorporated. In all essential parts said Article 4 reads as follows: "The purpose of said incorporation is to establish, maintain and operate a collegiate institution of learning under

the said name of Harding College, for the instruction and education of men, women and children, in which said institution shall be maintained a standard four-year course of study leading to the baccalaureate degrees". Said Article 4 further states that the College may own and operate a laundry, own farm land and engage in farming, own and operate a print shop or shops, and engage in any other business incident to the maintenance and operation of an educational institution provided that the revenue derived therefrom shall be used for no other purpose.

Ark. Stats. 64-1405, among other things, provides that the corporation (school) is empowered "to buy and to sell real and personal property . . . and to hold the same".

It is important, therefore, to a decision in this case to examine the record to find out the nature, extent and usage of the personal property used in connection with the printing press and the laundry located on the campus of the College, and to find out the extent and usage of the off-campus real estate holdings of the College with a view to determining whether the property is being used "exclusively for school purposes". It is necessary also to consider these properties and usages in relation to the aims and purposes of the College.

The evidence contained in the record consists of the deposition of Dr. George S. Benson, President of the College, and certain exhibits attached thereto. From these sources we find the evidence to be substantially as hereafter set out.

*Printing Press.* The College operates a printing press for two purposes: It provides jobs for certain students and it provides an immediate and accurate service for college printing. About 10% of the total volume of work comes from outside of the College. The print shop shows a profit of 2% over the past nine years and it is not operated for profit. The print shop has never done any advertising. No one connected with the print shop is listed with the College faculty, and no scholastic credits are given for such work.

*Laundry.* One purpose for operating the laundry is to provide jobs to enable young people to attend college. The second is to provide convenient service to the institution, the faculty and student body. A third purpose is to provide practical business experience for students employed there. The laundry accepts work from the residents of Searcy who wish to bring their work there. Over the past nine years the outside work has amounted to about 37% of the total. The laundry is not operated for profit. There is no prescribed course for which credit is given in connection with the operation of the laundry. On one or two occasions the laundry has advertised for business from the general public. No one in connection with the laundry is listed on the College faculty.

*The Dairy* is operated for two fundamental purposes: One is to provide employment for the students and the other is to provide milk and meat products to the students at the lowest possible cost. Beginning with the present semester the College has commenced a course in animal husbandry to be followed by a course in poultry and a course in dairying. From time to time portions of the dairy cattle are sold when advisable to increase herd efficiency and the money goes into the operational fund. Over the past nine years the dairy has operated at an average 3% loss. Making a profit is not the chief concern of the College. The dairy began selling products to the general public in 1957 when the Searcy dairy ceased to operate and now the College dairy is the only Grade A dairy operating in that County. All of the dairy's work is done by students except for one full-time operator. No one connected with the dairy is listed with the College faculty, but may be in the near future. No part of the dairy is located on the College campus.

*Lands.* The lands heretofore described, consisting of more than 400 acres, are not part of the campus and are used for cattle grazing. Some of the lands are several miles in distance from the College campus.

In addition to the above Dr. Benson testified, generally, to substantially the following: It is our purpose

to train young people for effective living and good citizenship; we try to combine practical training with scholastic training; especially the College is interested in the introduction of more livestock instead of the old one-crop method of farming, and in teaching young people to understand America's private enterprise economy; we have a course this semester in animal husbandry for the first time for which credit will be given; we have on the farm a herd of registered White-Faced cattle, a herd of registered Holstein cattle, and a herd of registered Jersey cattle, all used in connection with the course given in dairying and animal husbandry; in keeping with good breeding practices we sort out and sell certain groups of animals when the herd becomes larger than we wish to keep; and the proceeds go to the College. Judging cattle is a part of our instruction. We do make a profit by taking smaller cattle and raising them and bringing them up to marketable conditions and selling them, the profit going into the College funds. There is a general delivery service in the operation and sale of dairy products to the general public. The Print Shop has been in operation for more than 20 years. It not only provides jobs for students who need the money but it serves to correctly and quickly do our own printing for the College, and only 10% of the work comes from the outside. The Laundry aids about 40 students each year to earn their college expenses, it provides convenient service for the institution, the faculty and the student body, and it provides practical business experience for the student employees. Over the past nine years about 37% of the laundry business comes from the City of Searcy, and during that time it has operated at a 6% loss. "I did not intend to make the impression that all three of them (Press, Laundry, and Dairy) are a part of the academic instruction" but they are related to it. "There are no prescribed courses for which credit is given with reference to the operation of the laundry". It has been in operation since 1934. It would be possible but not desirable from an economical standpoint to operate the laundry and the dairy without making sales to outsiders.

We recognize the urgent demand and need for more educational institutions and also the wisdom of encouraging the satisfaction of those demands and needs in every legitimate way, but we are also mindful of our duty to protect the tax-paying public in every way required by the State Constitution. Notwithstanding the far reaching implications of the questions here involved there are only a few decisions of this Court to which we can look for guidance. The issues here presented for solution being peculiarly constitutional questions we deem it proper to rely as far as possible on our own Constitution and our own decisions. In the case of *School District of Fort Smith* v. *Howe*, 62 Ark. 481, 37 S. W. 717, the court said: "As the decision of this case turns on the construction of our own constitution, we have not felt it necessary to discuss the cases from other states".

In the *Howe* case, *supra*, the School District owned certain vacant lots not used for school grounds which were kept for rent and for sale, the proceeds being used exclusively for school purposes. In the cited case it was conceded that the vacant lots were "public property" which is not true in the case under consideration. Therefore, the Court was considering that portion of Article 16, Section 5, which exempts from taxation "public property used exclusively for public purposes". What the Court had to say should be pertinent in this case because we are here considering that portion of the same section which exempts "grounds used exclusively for school purposes". In holding that the vacant lots were not exempt from taxation the court made, among others, the following announcements: "The proceeds arising therefrom, when sold or rented, are to be used for the benefit of the public schools of said District, yet this does not justify us in holding that the land itself is now used exclusively for public purposes within the meaning of our constitution". "It is necessary that a school district shall have a school building and grounds. If such property was taxed and sold for the non-payment of taxes the public would have to pay other taxes in order to replace the same, for it is absolutely essential that a school district should own a school house. For that reason school build-

ings and grounds are exempt from taxation. But it is not essential that a school district should hold land for the purpose of sale or rent, and as an investment for profit. When land is thus held by a school district it is deemed to be held by such corporation in 'its commercial capacity as a private corporation', and the reasons for exempting such property from taxation are slight as compared with those which exist in favor of exempting buildings and grounds *actually* and *exclusively* used for public purposes''. (Emphasis supplied).

This court was dealing with that portion of Article 16, Section 5, exempting from taxation ''buildings and grounds and materials used exclusively for public property'' in the case of *Brodie* v. *Fitzgerald,* 57 Ark. 445, 22 S. W. 29. The subject property consisted of rent houses and a mill, the revenues from which were used exclusively for the maintenance of a charity hospital. In that case the court quoted with approval: '' 'Taxation is an act of sovereignty to be performed, so far as conveniently can be, with justice and equality to all, and exemptions, no matter how meritorious, are acts of grace, and must be *strictly construed,* and *every reasonable intendment* must be made that it was not the design to surrender the power of taxation or to exempt any property from its due proportion of the burden of taxation. *As taxation is the rule and exemption the exception,* the intention to make an exemption ought to be expressed in *clear and unambiguous terms;* and it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain. The fact that the rents and revenues of a property owned by a charitable corporation are devoted to the purpose for which the corporation was organized, will not exempt such property from taxation. It is only when the property itself is *actually* and *directly* used for charitable purposes that the law exempts it from taxation' ''. (Emphasis supplied). In that case the court also stated: ''The guarded language of the constitution describing the property to be exempted as 'buildings and grounds and materials used exclusively for public charity' leaves no room for doubt that it was not the intention to exempt any other

property from taxation, save such as is used *exclusively* for public charity, and that *exemption cannot be extended to property leased or rented and from which revenue is derived,* though the same be applied solely to support the charity''. (Emphasis supplied). In the case of *Hot Springs School District* v. *Sisters of Mercy,* 84 Ark. 496, 106 S. W. 954, this court again considered the matter of exempting property for charitable purposes. It was there stated: ''It is well settled that no one can exempt his property from taxation simply by the *exclusive use of the income* for public charity; for that is a matter which appeals to his own individual spirit of benevolence. It may be given today and withheld tomorrow. But a different rule prevails where the property is *directly* and *exclusively* used for that purpose.'' (Emphasis supplied). In the case of *Robinson* v. *Indiana & Arkansas Lumber and Manufacturing Company,* 128 Ark. 550, 194 S. W. 870, at Page 557 of the Arkansas reports, the court stated: ''There is a material difference between the use of property exclusively for public purposes and renting it out and then applying the proceeds arising therefrom to the public use. The property under our Constitution must be actually occupied or made use of for a public purpose and our court has recognized the difference between the *actual use* of the property and the *use of the income.* So it will be seen that in our own cases last referred to, the property itself was not *directly occupied* or made use of for public purposes, but only the income derived therefrom and for this reason the court held that the property was not exempt from taxation under our Constitution''. (Emphasis supplied).

Because of the similarity of the language used in Article 16, Section 5, of the Constitution exempting from taxation property used for school purposes, for public purposes, and for charity, the principles and rules applying to one category will apply with force to the other categories.

When we apply the rules and principles set forth in the cases cited above to the facts and circumstances of

the case under consideration the following conclusions are pursuasively suggested. The laundry equipment and the dairy equipment together with the land acreage upon which the dairy is situated were not, in 1957, being used *directly and exclusively* for school purposes and therefore were not exempt from taxation at that time. In 1957 no course was taught, no teacher employed, and no credits given and it would be unrealistic to say that any of these facilities were being used for school purposes. No doubt certain benefits accrued to the College and the students from these operations, otherwise they would not have been maintained, but, as we have pointed out above, it does not follow that the sources from which these benefits come are exempt from taxation. To hold otherwise would be to give a liberal interpretation to the exemption clauses in Article 16, Section 5, that this court has already rejected. If a school can own and operate a laundry and a dairy tax-free then we know of no logical or legal reason why it could not likewise own and operate a hat factory, a shoe factory, a clothes factory or any other kind of a factory.

We note that a sizeable percentage of the business done by both of these College enterprises is in competition with like businesses in the town of Searcy. Not only does this circumstance show that said enterprises are not operated *exclusively* for the College but it is contrary to the avowed purpose of the College to teach the benefits of "America's private enterprise economy".

We do want to point out however that the College now proposes to inaugurate a course in animal husbandry and dairying and perhaps other courses in which instructors will be employed and credits given. If and when that is done a different situation will be presented relative to the exemption from taxation of such equipment and lands as are necessary to implement such course or courses and as are used directly and exclusively therefor.

We have also concluded that the Print Shop was subject to taxation in 1957, but for somewhat different reasons. It is not denied that the shop is maintained for two purposes—to provide jobs for certain students

and to provide immediate and accurate service for school printing. Assuming, as we understand the case to be, that the printing is done for legitimate school purposes we think the equipment would be exempt under Article 16, Section 5, provided it was used *exclusively* for that purpose. We do not think, however, that it was so used in 1957 since it is conceded that 10% of the work was not for the College. We recognize that a casual or incidental outside usage might not always be inconsistent with the constitutional requirement of exclusiveness but we are unwilling to say that the outside work in this instance was casual or incidental. The press has been in operation for many years and during all this time the outside work has been accepted. If we now arbitrarily hold that 10% is incidental and inconsequential and that it does not violate the constitutional injunction of exclusiveness, then we would open a Pandora box of border-line questions to plague the courts in the future. We are not inclined to endorse a procedure that could result in whittling away the intent of the Constitution. Again we point out that a different situation would be presented if all the printing work hereafter is done for the College.

In view of what we have heretofore said it follows that the decree of the trial court must be, and it is hereby, reversed.

Reversed.

GEORGE ROSE SMITH, J., not participating.

JOHNSON and ROBINSON, JJ., dissent.

JIM JOHNSON, Associate Justice, dissenting. After a careful study of the case at bar, I find it impossible to agree with the majority view. Harding College is a private school. This Court held unequivocally in *Phillips County* v. *Sister Estelle,* 42 Ark. 536, that private and public schools are on a parity insofar as tax exemption is concerned.

My research reveals that not only are the public colleges of this State granted the tax exemptions here asked for by Harding, but in addition more than $600 per stu-

dent is provided from State funds to support these public institutions. The question that comes to my mind is, if the majority opinion is allowed to stand, where will the line be drawn? Will it be contended in the future that the mere fact that a college provides housing for the faculty and dormitories for the students that it is in competition with the hotels, motels, rooming and apartment houses, with the real estate companies, etc., and should be taxable? Will it be contended that the fact that the college operates a cafeteria that it is in competition with the public restaurants and cafeterias and therefore should be taxable for this activity? Will it be contended that the college athletic program, the stadiums and gymnasiums, which are built to provide the general public, along with the students, proper seating facilities; and the concession stands which are used to provide the general public and the students refreshments, all of which services must be paid for by the public or the students, are in such competition with public recreational facilities such as pool halls and bowling alleys, that they too should be taxable? Just where will the line be drawn?

In my view, the majority opinion is saying, in effect, that the above enumerated examples, in addition to the printing press, dairy and laundry apparatus, claimed by Harding as tax exempt, do not fall within Article 16, Section 5 of the Arkansas Constitution, as school buildings and apparatus, libraries and grounds used exclusively for school purposes.

My research reveals that there are no Arkansas cases directly touching the question now before the Court, but there are cases involving the ''public purpose'' and the ''public charity'' exemptions which are pertinent. With respect to properties devoted to ''public purposes'' and ''public charity,'' the language of Article 16, Section 5 of the Constitution is as follows:

''Public property used exclusively for public purposes, and

''Buildings and grounds used exclusively for public charity.''

It will be observed that in all three exemptions the phrase "used exclusively" appears, so necessarily the interpretation of that phrase as applied to public purpose and charitable property should be controlling in this case.

The case of *Hot Springs School District* v. *Sisters of Mercy,* 84 Ark. 497, 106 S. W. 954, is in point. The hospital was maintained by the Sisters of Mercy as a charitable institution. It contained rooms used exclusively by charitable patients, but it also had some rooms which were occupied by paying patients. A drug store was maintained in the hospital, and those who were able to pay were charged for their prescriptions. The hospital also maintained a school for nurses, employed a teacher, and employed girls who gave nursing services to patients while taking nurse's training. All moneys received went to the hospital and no funds were diverted to any other institution. From the opinion:

"The judgment appealed from exempts only the ground upon which the hospital building is situate and the building thereon; and the sole question in the case is, whether or not they are used exclusively for public charity.

". . . It is not denied that the whole object of the institution of appellee is one of public charity but appellant claims that it is not exclusively so used because pay patients are received, and because those able to pay are charged for prescriptions.

". . . The fact of receiving money from some of the patients does not, we think, at all impair the character of the charity, so long as the money thus received is devoted altogether to the charitable object which the institution is intended to further.

"In the case of *County of Henepin* v. *Brotherhood of Gethsemane,* 27 Minn. 460, the court said: 'A hospital with the necessary grounds, free to all who are not pecuniarily able, and supported partly by private contributions and partly by fees from patients, but producing no profit, is a purely public charity.'

"In the case of *Penn. Hospital of Delaware Co.*, 169 Pa. St. 305, the court said: 'Property which is used directly for the purpose and in the operation of the charity is exempt, though it may also be used in a manner to yield some return and thereby reduce the expenses.'

\* \* \*

"We think the property meets the constitution requirement of being 'buildings and grounds and materials used exclusively for public charity.' "

In *Brodie* v. *Fitzgerald*, 57 Ark. 445, 22 S. W. 29, it appeared that the Sisters of Charity and Mercy who operated a public charity also owned real property which was rented for income purposes. Taxes were levied against this rental property. It was contended that as the rental ultimately was used for charitable purposes, the property was exempt. This contention was rejected, this Court saying:

"Under our constitution the rule stated by 1 Desty on Taxation, p. 119, applies. It is as follows: 'The fact that the rents and revenues of a property owned by a charitable corporation are devoted to the purposes for which the corporation was organized, will not exempt such property from taxation. It is only when the property itself is actually and directly used for charitable purposes that the law exempts it from taxation.' "

This case is without application here for the simple reason that Harding College does not rent any of its properties for rental income. It actually and directly uses all of the property it owns for educational purposes. The operation of the press, the laundry and the dairy are carried on primarily for educational purposes and the receipt of revenue from a few outside customers is just as incidental as was the receipt by the Sisters of Mercy of payments from those patients who could afford to pay for the use of the hospital's facilities.

In pointing out why the rental property was held to be taxable in *Brodie* v. *Fitzgerald, supra,* this Court in *Robinson* v. *Indiana & Ark. Lumber & Manufacturing Co.,* 128 Ark. 550, 194 S. W. 870 remarked:

"The reason is that under our constitution it is only when the property itself is actually and directly used for public charity that the law exempts it from taxation."

*Yoes* v. *City of Fort Smith*, 207 Ark. 694, 182 S. W. 2d 683, involved a "public purpose" exemption. The City of Fort Smith issued revenue bonds and constructed a waterworks system. A reservoir was constructed in Crawford County some twenty-five miles from Fort Smith. The tax officials of Crawford County levied taxes against this property. They contended that all of appellee's property in Crawford County was not being used "exclusively for public purposes," and in their brief said:

" 'In order to secure its water supply, appellee constructed its dam and plant in the northern part of Crawford County, more than twenty-five miles from the city. This, we concede, it had a right to do, but only for one purpose, and that was supplying its citizens water within the corporate limits. When it went beyond this, it was no longer using the property exclusively for the public purpose for which the waterworks was designed. True, this and other courts have held that in connection with this purpose, mere surplus water may be disposed of, but it has never been held that the municipality can spread out into the general utility field and then escape liability . . .' (*i.e.*, liability of taxation on the property). Appellants thus concede, in this section of their argument, that appellee's property would be exempt from the taxation here sought to be imposed except for the contracts to furnish water to (a) Alma, (b) Van Buren, and (c) Camp Chaffee."

This Court answered:

"A city may sell surplus water without losing its right to tax exemption as public property used exclusively for public use. In 3 A. L. R. 1445, there is an annotation on whether public property is taxable where income is received incidental to public use; and the rule is stated: 'As a general rule, it may be said that where the primary and principal use to which the property is put is public,

the mere fact that income is incidentally derived from its use does not affect its character as property devoted to public use.' The annotation is supplemented in 129 A. L. R. 485, and also in 101 A. L. R. 790, where the case of *Hope* v. *Dodson,* 166 Ark. 236, 266 S. W. 68 is cited to sustain the above quoted rule.''

\* \* \*

''Appellants say in their brief: 'After the construction of the dam, under a WPA grant, a large swimming pool and large bath house were constructed upon a tract of land which appellee had acquired wholly below the dam; admission fees were charged to swim in the pool, and other charges were made in connection with the use of the bath house, towels, etc.; cold drinks, sandwiches, and such articles, were sold at the bath house and about the swimming pool; a coin-operated music machine was operated. It is apparent that all of these things were separate and apart from, and had no relation to, the supplying of water. In addition to these things, a number of cottages have been erected upon the land below the dam, and title thereto is in Fort Smith . . .'

''All the area below the dam was placed under the control of the Parks Board of the City of Fort Smith and has all the time been handled as a public park. The facilities are open to the public at large, and are patronized by the people of Crawford County, as well as by people from elsewhere. A small admission charge is made for the use of the swimming pool, in order to defray towel expense, etc.; cold drinks and sandwiches are sold by a concession; but from all of the admission charges and concession money, the City of Ft. Smith has never made any profit; in fact, it still lacks several hundred dollars of receiving back its original outlay for towels. If any profit should ever be received, it will go back into maintenance, etc.''

The Court quoted this from *Hannon* v. *Waterbury,* 106 Conn. 13, 136 A. 876:

''The charge of a small fee covering a part of the cost of the maintenance of the pool in paying a super-

visor, instructors, janitors, and the like, while the munici-
pality furnished the buildings, the swimming pool, the
apparatus and equipment in connection therewith, the
coal, electricity, water chemicals, and other necessaries
for the maintenance of the pool from the rule of govern-
mental immunity. The city was not deriving a profit
from this small fee, the charge was a mere incident to
the public service rendered in the performance of a gov-
ernmental duty.''

And then added:

''Without lengthening this opinion by the citation of
other authorities, we conclude that the use of the prop-
erty below the dam, as a swimming pool, bath house,
and public park, did not destroy the status as tax-exempt
property under Article 16, Section 5, of our Consti-
tution.''

If an incidental charging for swimming, towels, cold
drinks, sandwiches, coin machines, and the rental of cot-
tages does not impair the ''exclusive use'' for public
purposes, it follows that school property is used ''exclu-
sively for school purposes,'' even though a small amount
of surplus products and services may incidentally be sold
to outsiders who are not solicited.

The above case certainly should be controlling in the
case at bar. I can think of no excuse to give a different
meaning to the same words used in the same section of
the Constitution simply because in one instance the prop-
erty of one of the finest private schools in this Nation
is involved. If the majority is compelled to deviate from
the rule set out in *Hot Springs School District* v. *Sis-
ters of Mercy,* and *Yoes* v. *City of Fort Smith, supra,* it
seems to me the least this Court could do would be to
take the equitable approach to this situation by allowing
a pro-rata tax exemption for that amount of the prop-
erty here involved which is admitted to be used in the
strictest sense exclusively for the school.

For the reasons stated above, I respectfully dissent.