PULASKI COUNTY *v.* JACUZZI BROTHERS DIVISION,
Smith Fiberglass Products, Merico (Act 9 Industries) and City
of Little Rock, Arkansas

96-1333 964 S.W.2d 788

Supreme Court of Arkansas
Opinion delivered March 5, 1998

94

*Pat Crossley*, for appellant.

*Thomas M. Carpenter* and *Melinda Raley*, for appellee City of Little Rock.

*Friday, Eldredge & Clark*, by: *Barry E. Coplin* and *Clifford W. Plunkett*, for appellees Jacuzzi Bros. Div. and Smith Fiberglass.

*Grobmyer, Ramsay & Ross*, by: *Robert R. Ross*, for appellee Merico.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, B.A. McIntosh, the Pulaski County Assessor, appeals from a judgment of the Pulaski County Circuit Court in favor of Appellees, (the City of Little Rock, Jacuzzi Brothers Division of Jacuzzi, Inc., Smith Fiberglass Products, Inc., and Merico, Inc.), holding that real property owned by the City and leased to Jacuzzi, Smith, and Merico should be removed from the *ad valorem* tax rolls because the property is exempt from taxation pursuant to Article 16, Section 5, of the Arkansas Constitution, and Act 9 of 1960, which implemented Amendment 49 to the Arkansas Constitution. Until 1991 McIntosh recognized that each of the City-owned properties was exempt from *ad valorem* taxes under Article 16, Section 5(b), of the Arkansas Constitution. However, in 1991 McIntosh placed each of the properties on the Pulaski County tax rolls and challenged the continued exemptions, arguing that they were unwarranted after the City's bonds, financing the acquisition of and improvements to the properties, have matured and been fully paid. The appellees sought to abate the tax assessment and prevailed in that action in the Pulaski County Court. On appeal, the Pulaski County Circuit Court agreed that the properties were entitled to the tax exemption. From that decision comes the instant appeal. Finding no merit in appellant's arguments, we affirm.

The facts underlying this matter are not disputed. Pursuant to Amendment 49 to the Arkansas Constitution, Act 9 of 1960, and following voter approval, the City of Little Rock issued industrial development revenue bonds and used the proceeds to acquire and improve properties upon which Jacuzzi and Smith operate industrial plants, (and where Merico operated an industrial plant until December 31, 1995). Jacuzzi manufactures water pumps and other water systems equipment at its facility and employs approximately 200 people in its operations. Smith manufactures fiberglass pipe and related products and employs approximately 340 people.

In 1961 Jacuzzi was successfully recruited, as part of Arkansas's industrial development program, to locate its manufacturing facility in Little Rock. Jacuzzi's recruitment package included a financing plan to be achieved by the City's issuance of its industrial development revenue bonds for the purpose of acquiring and improving certain real property for Jacuzzi's use in its industrial operations, the execution of a lease by the City and Jacuzzi relating to that property, and the payment by Jacuzzi to the City of annual lease payments and specified payments in lieu of taxes, (PILOTs). The Jacuzzi lease provided for an initial twenty-year term, with five consecutive extension renewal options, each for a period of ten years. Jacuzzi exercised its renewal options under the lease, and since placed into service in 1961, the Jacuzzi facility has been continuously operated as an industrial plant. The lease also recites that the property is exempt from *ad valorem* taxes under the Arkansas Constitution. Since 1961 the property has remained exempt from *ad valorem* taxes, and Jacuzzi has made all required PILOTs to the City. The Act 9 bonds relating to the Jacuzzi facility matured and were fully paid on December 1, 1981.

Similarly, Smith was successfully recruited to locate in Arkansas in 1963. Smith's recruitment package included low interest financing to be achieved through the issuance of Act 9 tax-exempt industrial development revenue bonds, the execution by the City and Smith of a lease of certain real property to Smith for Smith's use in its industrial operations, and the payment by Smith to the City of PILOTs. Smith executed its lease in 1963 for an initial twenty-year term, with twenty consecutive extension options, each for a period of one year. Smith has continuously

operated an industrial facility on the property, and, since 1963, the property has been exempt from *ad valorem* taxes, and Smith has made all required PILOTs to the City. The Act 9 bonds relating to the Smith facility matured and were fully paid on May 1, 1983.

Likewise, Arkansas's industrial development program secured Merico's industrial operations in the City of Little Rock. Merico opted to cease operation of its facility when its lease with the City expired on December 31, 1995. For purposes of this appeal, however, until December 31, 1995, the Merico facility presented a situation substantially identical to that of Jacuzzi and Smith.

■ It is well-settled that our standard of review in tax cases requires the taxpayer to establish an entitlement to an exemption from taxation beyond a reasonable doubt. *Pledger v. C.B. Form Co.*, 316 Ark. 22, 25, 871 S.W.2d 333 (1994) (citing *Pledger v. Baldor Int'l*, 309 Ark. 30, 827 S.W.2d 646 (1992)). Moreover, a strong presumption operates in favor of the taxing power. *C.B. Form*, 316 Ark. at 25 (citing *Ragland v. General Tire & Rubber Co.*, 297 Ark. 394, 763 S.W.2d 70 (1989)). Tax exemptions are strictly construed against the exemption, and this Court has held that "to doubt is to deny the exemption." *C.B. Form*, 316 Ark. at 25 (citing *Baldor*, 309 Ark. at 33).

■ Article 16, Section 5(b), of the Arkansas Constitution provides that "public property used exclusively for public purposes" shall be exempt from taxation. Although Amendment 49 to the Arkansas Constitution is now repealed, it once provided the constitutional authority for industrial development bonds. Conceptually, Amendment 65 to the Arkansas Constitution has replaced Amendment 49 with respect to the issuance and purposes of revenue bonds. Amendment 65 also permits governmental units, like the City of Little Rock, to issue revenue bonds to finance all or a portion of the costs of facilities for the securing and developing of industry.

■ Act 9 of 1960, codified at Ark. Code Ann. §§ 14-164-201 to -224 (1987 & Supp. 1997), is known as the Municipalities and Counties Industrial Development Revenue Bond Law. These statutes are intended to "supplement all constitutional provisions and other legislation designed to secure and develop industry."

Ark. Code Ann. § 14-164-202. The statutes may also permit a municipality to issue bonds to accomplish that purpose. Ark. Code Ann. § 14-164-206. The Revenue Bond Law empowers municipalities and counties to develop industry by owning, acquiring, constructing, equipping, and even leasing facilities that can be used in securing or developing industry within or near the municipality or county. Ark. Code Ann. § 14-164-205.

■ Ark. Code Ann. § 14-164-701 (1987) declares and confirms that securing and developing industry is vital to the economic welfare of the State of Arkansas and its people. Significantly, that statute urges that "maximum flexibility" should be given to governmental entities in their efforts to "retain and expand existing, and locate new, industrial facilities." Moreover, the statute explicitly applies to financings initiated under the Arkansas Constitution, Amendment 49, and provisions of the Revenue Bond Law. The statute embraces the exemption from *ad valorem* taxes of all industrial facilities which were exempt under Article 16, Section 5, of the Arkansas Constitution, as interpreted by this Court in *Wayland v. Snapp*, 232 Ark. 57, 334 S.W.2d 633 (1960). Further, section 14-164-701 contemplates that governmental entities and industrial concerns will negotiate and contractually agree to PILOTs.

■ Given the framework of Amendment 49 to the Arkansas Constitution and Act 9 of 1960, this Court first considered the issue of whether property was being used exclusively for a public purpose, in the context of a proposed Act 9 financing, in *Wayland v. Snapp*, 232 Ark. 57 (1960). According to our decision in *Wayland*, Section 1 of Amendment 49 clearly made the act of "securing or developing industry" a public purpose. *Snapp*, 232 Ark. at 65. This Court also noted that it has been liberal in its construction of constitutional amendments in order to carry out the obvious purpose of the people in adopting the amendments and that there is an "implied authority to employ reasonable means to carry out the purpose of the amendment." *Id.*

■ The appellant in *Snapp* challenged a proposed bond issue under Amendment 49. The appellant reasoned that the county would not reap the benefits of the proposed project

because the county issuing the bonds would not hold title to the building to be erected. In considering the purpose of Amendment 49, the *Snapp* Court recalled its determination in an earlier case that while others may benefit from a project, "the fact that benefits cannot be isolated, is no reason to preclude such benefits for those who properly come within the scope of the amendment." *Snapp*, 232 Ark. at 65 (citing *Myhand v. Erwin*, 231 Ark. 444, 330 S.W.2d 68 (1950)). Further, the *Snapp* Court acknowledged that the prime objective of the people in that county in implementing the entire undertaking was not simply to erect a building but to alleviate unemployment. *Id.* The *Snapp* Court concluded that the county and the City of Batesville, where the industry was to be located, would reap the benefits of the project. The property in *Snapp* was used exclusively for a public purpose and, therefore, exempt from taxes under Article 16, Section 5(b), of the Arkansas Constitution.

■ The *Snapp* Court also held that the whole purpose for the adoption of Amendment 49, the passage of Act 9 of 1960, and the efforts of municipalities and counties in implementing those authorities was for the public welfare, which is "obviously and undoubtedly a 'public purpose.'" *Snapp*, 232 Ark. at 72. The entire program was not meant for any other purpose, particularly not for the benefit of a private business. Any benefit a private business received from the entire undertaking was "entirely incidental." *Id.* The analysis in *Snapp* addressed the entirety of a unique program — carved out by the people of this State by their adoption of Amendment 49 and created by our legislature by the passage of Act 9 of 1960 — designed for the purpose of developing and securing industry. The use of City-owned property in furtherance of this State's industrial development program has been deemed a public purpose.

Like *Snapp*, the instant properties were all publicly owned at the times relevant to this appeal, and the City of Little Rock, like the City of Batesville, sought to secure and develop new industries to relieve unemployment. In that endeavor, the City of Little Rock initiated its industrial development program with respect to Jacuzzi, Smith, and Merico. The distinguishing fact in the instant case is that the bonds financing those projects have matured and

been paid. The appellant contends that the City's public purpose then ended.

However, even after the bonds financing the Jacuzzi, Smith, and Merico projects have matured and been paid, the City of Little Rock's public purpose continues. The emergency clause of section 14-164-701 provides that the industrial development program of the State and her counties is "necessary for the achievement of the public benefits flowing from the retention or expansion of existing employment and the obtaining of additional employment and payrolls." *See* Ark. Code Ann. § 14-164-701 (1987). Likewise, the City seeks to retain the existing industrial facilities, jobs, and payrolls that continue to be generated by Jacuzzi and Smith, (and by Merico until the end of 1995).

■ Certainly, the City of Little Rock was authorized to issue bonds in furtherance of its industrial development program. However, the issuance of bonds was but one component of the City's program. Additionally, the City was empowered to execute leases and to enter into contracts, including PILOT agreements, to achieve its purpose of securing, developing, and retaining industry. Therefore, in the context of an Act 9 industrial development program, maturity and payment of bonds does not independently trigger the end of the public purpose and the end of the exemption from *ad valorem* taxes.

■ The appellant relies heavily on decisions of this Court involving the application and interpretation of Article 16, Section 5(b), of the Arkansas Constitution, where we have held that private use of public property was not for an exclusively public purpose. *See Crittenden Hosp. Assoc. v. Board of Equalization*, 330 Ark. 767, 958 S.W.2d 512 (1997); *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995); *B.D.T. v. Moore*, 260 Ark. 581, 543 S.W.2d 220 (1976); *Hilger v. Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960); and *School District of Ft. Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896). As the appellees correctly contend, these decisions are inapplicable in the instant case. None of these cases involved a municipality or county acting in furtherance of Amendment 49 or Act 9 of 1960 for the public purpose of securing and developing industry. These cases were decided

outside the unique framework of authority underlying Act 9 industrial development programs and financings.

Our decision in *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991), makes this distinction clear. The appellants in *Phillips* relied on the authority of *Snapp* to support their argument that a public entity's construction of an arts center, to be used for a public purpose, was an exclusive public use under Article 16, Section 5(b). Rejecting that argument, we noted that *Snapp* concerned an industrial development project facilitated by Amendment 49 and Act 9 of 1960. We also stated that both the amendment and the act were intended to facilitate the procurement of industry, and that "the amendment specifically describe[d] such an activity as a public purpose." *Phillips*, 306 Ark. at 93. We further distinguished *Phillips* from *Snapp* by observing that, in *Phillips,* there was no comparable constitutional or statutory authority indicating that the proposed use would constitute an exclusive public purpose activity. *Id.*

 We find that appellees have proved their entitlement to the exemption beyond a reasonable doubt and that the circuit court correctly held that the subject properties are entitled to an exemption from *ad valorem* taxes pursuant to Article 16, Section 5(b), of the Arkansas Constitution and consistent with our decision in *Wayland v. Snapp.* Accordingly, we affirm.

NEWBERN and IMBER, JJ., dissent.

Special Justice PAUL LINDSEY, concurs.

ANNABELLE CLINTON IMBER, Justice, dissenting. I must disagree with the majority's conclusion that property acquired under Act 9 of 1960 keeps its tax exempt status after the retirement of Act 9 bonds used to finance the acquisition of the property. The majority relies solely upon our language in *Wayland v. Snapp*, 232 Ark. 57, 334 S.W.2d 633 (1960), concerning the tax exempt status of Act 9 property. I am not persuaded, however, that *Wayland* supports the majority's conclusions.

The majority correctly acknowledges the numerous decisions in which we have held that public property is not used exclusively for a public purpose under Article 16, § 5(b) of the Arkansas Con-

stitution when that property has been used for a private purpose. *See Crittenden Hosp. Assoc. v. Board of Equalization*, 330 Ark. 767, 958 S.W.2d 512 (1997); *City of Little Rock v. McIntosh*, 319 Ark. 423, 892 S.W.2d 462 (1995); *City of Fayetteville v. Phillips*, 306 Ark. 87, 811 S.W.2d 308 (1991); *Holiday Island Suburban Improvement Dist. #1 v. Williams*, 295 Ark. 442, 749 S.W.2d 314 (1988); *B.D.T. v. Moore*, 260 Ark. 581, 543 S.W.2d 220 (1976); *Hilger v. Harding College*, 231 Ark. 686, 331 S.W.2d 851 (1960); *School Dist. of Ft. Smith v. Howe*, 62 Ark. 481, 37 S.W. 717 (1896). The majority is also correct when it notes that the particular property in this case is tax exempt solely because of its unique status as property financed under Act 9. This court, in *Wayland*, carved out a specialized exception to our traditional Article 16, § 5(b) tax exemption analysis when we stated that "only where the title of property is acquired and the property itself is used by a city or county (or by both) *pursuant to Act No. 9 and/or Amendment No. 49*" is the property used exclusively for a public purpose. *See Wayland, supra* (emphasis added). It is the property's unique characterization as Act 9 property that allows it to remain off the county tax rolls. The majority now seeks to expand the exemption perpetually. I cannot subscribe to such an outcome.

We noted in *City of Fayetteville v. Phillips, supra*, that Act 9 was intended to facilitate procurement of industry, and that Amendment 49 made the act of "securing or developing industry" a public purpose. In *Wayland*, we indicated that, together, Act 9 and Amendment 49 were designed for the purpose of developing and securing industry. Both of these goals have been accomplished. The bonds were issued, the land procured and leased out to private enterprises, and industry was secured. The bonds have now been retired. The property is no longer being "used by a city or county (or by both) *pursuant to Act No. 9 and/or Amendment No. 49.*" *See Wayland, supra* (emphasis added). Therefore, the property loses its tax exempt status under the limited exception carved out in *Wayland* for property financed under Act 9.

The property in this case has been leased to private industrial enterprises. The mere fact that the use of the property still alleviates unemployment, alone, is insufficient to grant tax exempt status. *See Crittenden Hosp. Assn. v. Board of Equalization, supra*;

*Holiday Island Suburban Improvement Dist. # 1 v. Williams, supra.* In the *Holiday Island* case, concerning recreational property only open to property owners within an improvement district, we explained:

> The District submits that "retirement" is an industry and Holiday Island promotes employment and other economic benefits to northern Arkansas. No doubt that is true, and if the issue here were tax exemption for the income from improvement district bonds, the public purpose might well be satisfied. But this is not the issue and it is clear the phrase "public purpose" is not an exact term . . . . [O]ur decision here deals only with a public purpose within the context of article 16 § 5(b).
>
> Just as it is clear that ad valorem taxes could not be lawfully imposed upon the general public to maintain the cost of construction or maintenance of facilities used for private purposes, we can conceive of no valid reason why facilities restricted to private use should be exempted from payment of taxes assessed against other properties of a similar character.

I see no reason why property leased by Jacuzzi Bros., Smith Fiberglass, and Merico Inc. should be exempted perpetually from payment of ad valorem taxes. Once the benefit of Act 9 financing has been realized and the bonds have been fully retired, the property has ceased to be used by the City of Little Rock pursuant to Act 9 and Amendment 49. The property in question is now no different than any public property leased to a private enterprise that has not been financed under Act 9. Under these circumstances, we should follow our traditional analysis in determining the property's tax exempt status and hold that the property is not exempt from taxation.

For the above reasons, I respectfully dissent.

NEWBERN, J., joins in this dissent.