The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, AR 71611-3867
Dear Senator Bradford:
I am writing in response to your request for my opinion on the following questions:
 1. Would a golf course which is run by a private individual for a municipality pursuant to a 60-year lease of city park property, with all rights of ownership in the lessee for the 60 years, including the right to mortgage the property and collect profits with a percentage going to the municipality, but the municipality retaining the eventual ownership of the buildings and improvements thereon, be exempt from ad valorem taxation pursuant to article 16, § 5 of the Constitution of the State of Arkansas?
 2. Can the legislation which provided for the development of public parks (Act 486 of 1965) be said to be analogous to legislation authored for industrial development for cities (specifically Act 9 industrial revenue bond legislation) and provide tax-exempt status here?
 3. If this is not public property used exclusively for public purposes, and if the lease is silent as to taxes, would the individual lessee be responsible for payment of taxes on the improvements under such a long-term ownership lease or the municipality? If taxes are due, is Union Compress Co. v. State, 64 Ark. 136, 41 S.W. 52 (1897), decisive on this issue?
RESPONSE
A definitive answer to your first question will involve factual determinations I am unable and unauthorized to make. However, based on the applicable law and the use of the property as described, I do not believe the tax assessor will consider the property exempt from ad valorem taxation. In my opinion, the answer to your second question is "no." With respect to your third question, assuming the lessee holds title to the improvements, I believe he, not the city, should be charged with the ad valorem tax burden.
Before addressing your specific questions, I must again note that a final determination will require a factual analysis that I am neither equipped nor authorized to undertake. Moreover, the authority to determine the city's tax liability is vested in the local tax assessor in the first instance (see A.C.A. § 26-26-1001), subject to review as provided by law. See A.C.A. §§ 26-27-317 and -318. The assessor must decide, on a case-by-case basis, whether property is "public property used exclusively for public purposes[,]" (Ark. Const. art. 16, § 5), and thus exempt from ad valorem taxation. All of the surrounding facts and circumstances must be examined in order to identify the exact nature, extent and usage of the particular property. See generally, Hilger v. Harding College,231 Ark. 686, 689, 331 S.W.2d 851 (1960).
Question 1: Would a golf course which is run by a private individual fora municipality pursuant to a 60-year lease of city park property, withall rights of ownership in the lessee for the 60 years, including theright to mortgage the property and collect profits with a percentagegoing to the municipality, but the municipality retaining the eventualownership of the buildings and improvements thereon, be exempt from advalorem taxation pursuant to article 16, § 5 of the Constitution of theState of Arkansas?
In City of Fayetteville v. Phillips, 306 Ark. 87, 91-92, 811 S.W.2d 308
(1991), the Supreme Court made the following pronouncement regarding claims of tax exemption:
 As this court has consistently held, taxation is the rule and exemption the exception. Exemptions from taxation must always be strictly construed, regardless of merit, in favor of taxation and against exemption. Hilger v. Harding College, 231 Ark. 686, 331 S.W.2d 851
(1960); Off-Street Parking Development Dist. No. 1 v. City of Fayetteville, 284 Ark. 453, 683 S.W.2d 229 (1985). As stated in Brodie v. Fitzgerald, 57 Ark. 445, 22 S.W. 29 (1893):
 [E]xemptions, no matter how meritorious, are acts of grace, and must be strictly construed, and every reasonable intendment must be made that it was not the design to surrender the power of taxation or to exempt any property from its due proportion of the burden of taxation.
 The prior cases underscore the limiting language of the constitutional provision and emphasize the heavy burden on those seeking an exemption. Most recently the court concurred with this approach in Arkansas Conf. Ass'n of Seventh Day Adventists, Inc., v. Benton County Bd. of Equalization, 304 Ark. 95, 800 S.W.2d 426 (1990).
The Court defined the applicable burden of proof as follows:
 Under the tax exemption statutes, the burden on the party claiming the exemption is to prove entitlement beyond a reasonable doubt. See Ragland v. Dumas, 292 Ark. 515, 732 S.W.2d 118 (1987). We cannot accept any lesser standard for a tax exemption case arising under the constitution.
Id. at 94.
Article 16, § 5 of the Arkansas Constitution provides in pertinent part as follows:
 (b) The following property shall be exempt from taxation: public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity.
Article 16, § 6 of the Arkansas Constitution provides that:
 All laws exempting property from taxation other than as provided in this Constitution shall be void.
The legislature "defined" the exemptions listed in the above-quoted constitutional provision in A.C.A. § 26-3-301. See City of Springdale v.Duncan, 240 Ark. 716, 401 S.W.2d 747 (1966) (stating that the statute was intended to define the types of property exempt from taxation under article 16, § 5).
The Arkansas Supreme Court, in interpreting Ark. Const. art. 16, § 5, has consistently held that in order for property to be exempt from taxation two elements must be present: 1) the property must in fact be "public property," that is it must be owned by a public entity; and 2) it must be used exclusively for public purposes. See City of Little Rock v.McIntosh, 319 Ark. 423, 892 S.W.2d 462 (1995); Phillips v. City ofFayetteville, 306 Ark. 87, 811 S.W.2d 308 (1991); Wayland v. Snapp,232 Ark. 57, 334 S.W.2d 663 (1960). Both elements must be satisfied to meet the constitutional test. It is not the ownership of the property that entirely determines the matter. The property must also be used "exclusively" for public purposes.
With respect to the first prong of this test, I am somewhat confused by the facts as you have presented them. You indicate that the municipality has merely leased the property at issue to the private individual for a 60-year term, receiving as rent a portion of the profits and a promise that the municipality will receive buildings and improvements at the end of the term. Such leasing of public property to a private party for recreational purposes is specifically authorized by A.C.A. § 22-4-501, subject only to the condition that the term of the lease not exceed 99 years. On its face, this arrangement is not a "perpetual lease" of the sort that might involve a conveyance to the individual of fee title with the reservation of a rent in fee. Black's Law Dictionary (5th ed. 1979). I am consequently confused that you locate "all right of ownership in the lessee for the 60 years, including the right to mortgage the property. . . ." It would seem that, at most, the tenant owns a 60-year right of possession of the property, with the fee interest remaining in the city. For purposes of this analysis, I will assume this to be the case. Based on the limited facts you have supplied, in my opinion the property is thus in all likelihood "public." However, the factual determination of its status is one for the assessor to make, subject to review by the board of equalization and, possibly, the courts.
The remaining question, then, is whether the property is being used "exclusively" for public purposes. In my opinion, McIntosh dictates that this question be answered in the negative. In McIntosh, the Court affirmed a trial court's ruling that public airport property leased to various private businesses was taxable:
 In construing the constitutional provision, we have expressly held that municipally-owned airport land that is leased to private industries is not used for public purposes and therefore is taxable. B.D.T. v. Moore, 260 Ark. 581, 543 S.W.2d 220 (1976). The constitution is clear: Exclusive public use is a necessary element for exemption from ad valorem taxes. Phillips, 306 Ark. at 92, 811 S.W.2d at 311.
319 Ark. at 428. In support of this conclusion, the Court observed that "[t]he constitutional exemption provision is never to be used to give one business an advantage over another." Id. at 426. Consequently the location of any taxed and publicly accessible golf course in the city would in itself prohibit granting an exemption to the golf course described in your request. The McIntosh Court further rejected the argument that a tax exemption should apply because the profit realized by the private enterprises was merely "incidental" to the public good they achieved by providing car rentals and airplane hangars:
 However, as we said in Hilger [v. Harding College, 231 Ark. 686. 331 S.W.2d 851 (1960], to state that the businesses are privately run for profit is "incidental" would "result in whittling away at the intent of the Constitution." Id. at 696, 331 S.W.2d at 857.
* * *
 [T]he "predominant and incidental use" distinction is not applicable when public property is leased to a private business. In Hilger, we explained this when we refused to find that the operation of a private business was only "incidental" to legitimate public purposes and stated that such a finding "could result in whittling away the intent [of the exclusive public purpose requirement for exemptions] of the constitution." Hilger, 231 Ark. at 696, 331 S.W.2d at 857. The "predominant and incidental" use could have been an issue if the County had alleged that the City had to pay ad valorem taxes on all of its airport property because the predominant use of all the airport property was for private business. That issue is not before us.
319 Ark. at 430-31 (emphasis added; brackets in original).
In my opinion, the passage just quoted disposes absolutely of the question of whether the operation of a privately leased golf course on public land might be classified as an "exclusively public use."[1] With the one exception of cases implicating Ark. Const. amend. 49, which I discuss in the following section, the Court simply will not countenance any debate about the relative weight of private and public good realized from the private use of public land. Such property is taxable.
Question 2: Can the legislation which provided for the development ofpublic parks (Act 486 of 1965) be said to be analogous to legislationauthored for industrial development for cities (specifically Act 9industrial revenue bond legislation) and provide tax-exempt status here?
As reflected in your request, this question arises from the case ofPulaski County v. Jacuzzi Brothers, 332 Ark. 91, 964 S.W.2d 788 (1998), which you describe as holding "that despite the fact that Act 9 bonds had been paid off and private industry gained private profit, the public purpose provided for by the industrial revenue bond legislation continued and the industries at issue retained their tax exempt status, made possible because of their location on city-owned property and used exclusively for public purposes." The tax exemption available to property subject to Act 9 financing clearly marks an exception to the rule set forth in the preceding section. Your question, then, is whether a similar exception applies to public-park property developed pursuant to the provisions of Act 486 of 1965.
I should note that you have not indicated whether the municipality in this case in fact developed the park through the issuance of the revenue bonds authorized by Act 486. However, as reflected in my discussion, I do not feel this information is crucial to answering your question, which is really whether private business activity in public parks has been legislatively recognized as serving an exclusively public purpose, as is the case with private industrial activities on public lands. As previously noted, I think the answer to this question is "no."
Act 486 is codified at A.C.A. § 14-260-101 et seq. The recreational and park properties to which it applies clearly fall within the categories of property described at A.C.A. § 26-3-301, the legislation enabling the constitutional exemptions set forth in Ark. Const. art. 16, § 5. However, as discussed above, those exemptions are available not merely upon a determination that property qualifies as public, but further upon a demonstration by the proposed taxpayer that the property is being used for an exclusively public purpose.
By contrast, Act 9 of 1960 was adopted in furtherance of Amendment 49, which provided an exclusively constitutional authority for the issuance of industrial development bonds.[2] The significance of the fact that Act 9 was based on Amendment 49 was discussed at length in Jacuzzi:
 Given the framework of Amendment 49 to the Arkansas Constitution and Act 9 of 1960, this Court first considered the issue of whether property was being used exclusively for a public purpose, in the context of a proposed Act 9 financing, in Wayland v. Snapp, 232 Ark. 57
(1960). According to our decision in Wayland, Section 1 of Amendment 49 clearly made the act of "securing or developing industry" a public purpose. Snapp, 232 Ark. at 65. This Court also noted that it has been liberal in its construction of constitutional amendments in order to carry out the obvious purpose of the people in adopting the amendments and that there is an "implied authority to employ reasonable means to carry out the purpose of the amendment." Id.
332 Ark. at 97 (emphasis added). As reflected in the highlighted passage, the Supreme Court has interpreted the opening section of Amendment 49 as foreclosing any need even to conduct an individual "public purpose" analysis when the activity at issue is "securing or developing industry" on public property.
In the closing section of its opinion, the Court in Jacuzzi underscored how significant it deemed the distinction between claims of tax exemption brought under art. 16, § 5 and those brought under Amendment 49:
 The Snapp Court also held that the whole purpose for the adoption of Amendment 49, the passage of Act 9 of 1960, and the efforts of municipalities and counties in implementing those authorities was for the public welfare, which is "obviously and undoubtedly a `public purpose.'" Snapp, 232 Ark. at 72. The entire program was not meant for any other purpose, particularly not for the benefit of a private business. Any benefit a private business received from the entire undertaking was "entirely incidental." Id. The analysis in Snapp
addressed the entirety of a unique program — carved out by the people of this State by their adoption of Amendment 49 and created by our legislature by the passage of Act 9 of 1960 — designed for the purpose of developing and securing industry. The use of City-owned property in furtherance of this State's industrial development program has been deemed a public purpose.
* * *
 The appellant relies heavily on decisions of this Court involving the application and interpretation of Article 16, Section 5(b), of the Arkansas Constitution, where we have held that private use of public property was not for an exclusively public purpose. See Crittenden Hosp. Assoc. v. Board of Equalization, 330 Ark. 767, ___ S.W.2d ___ (1997); City of Little Rock v. McIntosh, 319 Ark. 423, 892 S.W.2d 462
(1995); B.D.T. v. Moore, 260 Ark. 581, 543 S.W.2d 220 (1976); Hilger v. Harding College, 231 Ark. 686, 331 S.W.2d 851 (1960); and School District of Ft. Smith v. Howe, 62 Ark. 481, 37 S.W. 717 (1896). As the appellees correctly contend, these decisions are inapplicable in the instant case. None of these cases involved a municipality or county acting in furtherance of Amendment 49 or Act 9 of 1960 for the public purpose of securing and developing industry. These cases were decided outside the unique framework of authority underlying Act 9 industrial development programs and financings.
 Our decision in City of Fayetteville v. Phillips, 306 Ark. 87, 811 S.W.2d 308 (1991), makes this distinction clear. The appellants in Phillips relied on the authority of Snapp to support their argument that a public entity's construction of an arts center, to be used for a public purpose, was an exclusive public use under Article 16, Section 5(b). Rejecting that argument, we voted that Snapp concerned an industrial development project facilitated by Amendment 49 and Act 9 of 1960. We also stated that both the amendment and the act were intended to facilitate the procurement of industry, and that "the amendment specifically describe[d] such an activity as a public purpose." Phillips, 306 Ark. at 93. We further distinguished Phillips
from Snapp by observing that, in Phillips, there was no comparable constitutional or statutory authority indicating that the proposed use would constitute an exclusive public purpose activity. Id.
332 Ark. at 98, 99-100.
The significance of Jacuzzi, then, is that it establishes beyond all question that a program of revenue bonds to develop public parks is categorically different from an Amendment 49/Act 9 program of revenue bonds to finance industrial development parks on public property. Indeed, in holding that the tax-exempt status of a public industrial park supporting private industry would survive even the retirement of the revenue bonds, the Court verged on adopting the stance that the indefinite maintenance, as distinct from the creation and development, of industrial activity is a sufficient public purpose to warrant permanent tax relief. This position is drastically different from the McIntosh
formula applicable here, under which the simple fact of private business activity, without regard to its significance to the public, undermines any claim of immunity from taxes.
Question 3: If this is not public property used exclusively for publicpurposes, and if the lease is silent as to taxes, would the individuallessee be responsible for payment of taxes on the improvements under sucha long-term ownership lease or the municipality? If taxes are due, isUnion Compress Co. v. State, 64 Ark. 136, 41 S.W. 52 (1897), decisive onthis issue?
I do believe Union Compress Co. v. State, 64 Ark. 136, 41 S.W. 52
(1897), would control in this case in the absence of a contractual provision regarding who will pay taxes. In Union Compress, the Supreme Court interpreted Sand. H. Digest § 6724 to mean that buildings, machinery and fixtures owned by the lessee are taxable to the lessee/owner as real property.[3] Id. at 139. The Supreme Court based its interpretation on the express language of the statute, a parallel New York statute and, amusingly, "peculiar reasons to be found in our habits and customs . . . which it is unnecessary to give here." Id. AlthoughUnion Compress is hoary and has never been cited in the century since its issuance, its continuing vitality is suggested by a passing remark by the Court in McIntosh: "The record in this case does not show whether the assessed valuation is made on the improvements, or on the land alone, or by adding them together." 319 Ark. at 426. This comment confirms that improvements on leased property might be assessed as realty separately from the land itself. In the present case, you have represented that the city "retain[s] the eventual ownership of the buildings and improvements" on the property. In my opinion, if this characterization means that title to the improvements will pass from the lessee to the city only upon expiration of the lease, the lessee should be deemed responsible for taxes on the improvements until the transfer is made.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] In Hilger, the Court stated that for purposes of analyzing whether an art. 16, § 5 exemption applies, "the principles and rules applying to one category will apply with force to the other categories."231 Ark. at 694. The airport in McIntosh was public property, as is the park in this case. It follows a fortiori that the principles and rules applied in McIntosh apply here.
[2] Amendment 49 has since been repealed and replaced by Amendment 65, which likewise authorizes the issuance of such bonds.
[3] The referenced statute is currently codified as A.C.A. §26-1-101(1), which defines taxable "real property and lands" as follows:
 [N]ot only the land itself, whether laid out in town lots or otherwise, with all things therein contained, but also all buildings, structures, improvements, and other fixtures of whatever kind thereon and all rights and privileges belonging or in anywise appertaining thereto.